## T. F. WORTHINGTON V. M. J. AND F. M. BAUGHMAN.

### No. 7228.

1. **Ancient Adjoining Surveys—Presumption.**—Where adjoining surveys are made by same surveyor about the same time and call for each other, the presumption is that they were made by the surveyor as described in the field notes of the surveys, and the burden of proof is upon the party claiming that they were not surveyed upon the ground as officially certified by the surveyor.

2. **Case Adhered to.**—Freeman v. Mahoney, 57 Texas, 626, adhered to.

3. **Same.**—See facts held not to negative the certificate of the surveyor to field notes on their face adjoining.  The excess claimed by a pre-emptor is accounted for by making an allowance in measurement from ascertained corners of about seventy varas to the mile, such excess being common in the surveys in that region of country.

APPEAL from Archer.  Tried below before Hon. P. M. STINE. No statement is necessary.

*R. F. Arnold,* for appellant.

*L. C.* and *F. J. Barrett,* for appellees.

HOBBY, PRESIDING JUDGE, *Section A.*—This is an action of trespass to try title, brought on March 6, 1889, by appellant, T. F. Worthington, against the appellees, M. J. and F. M. Baughman, to recover the land described in the petition as being a part of the George C. Bruner league and labor survey, and a part of the S. H. Barnwell 640 acres survey.  The plaintiff owned both of these tracts of land, which were surveyed in October, 1854, and according to their field notes were adjoining surveys.  The defendants claimed that there was a vacant strip of land between these surveys about 400 varas in width and 1124 varas in length, to which they were entitled by pre-emption.  The cause was tried by a jury, and a verdict was rendered for the defendants.  The plaintiff appeals.

The question in this case is, whether the strip, delineated on the accompanying sketch as lying between the Bruner and Barnwell surveys, is vacant land.  The plaintiff owns the Barnwell 640 acres survey and an undivided one-half interest in the Bruner league and labor survey, and was in possession of both.

As previously stated, these surveys, as claimed by the plaintiff and according to the field notes, are adjoining surveys, and so appear on the map of patented lands of Archer County. The Bruner survey is the elder; the field notes of the Barnwell calling to begin at the southwest corner of the former, thence west 1900 varas; thence north 1900 varas; thence east 1900 varas to the west line of the Bruner, and then south to the beginning.

The defendants contend, that the two surveys mentioned are not contiguous, but that a vacancy exists of about 400 varas between them, and upon this his pre-emption claim is founded.

The plaintiff introduced in evidence the patent to the George C. Bruner, dated March 3, 1856, containing the field notes of said survey, which begins at the southwest corner of survey 65 (Lindsay); thence south 684 varas to corner; thence west 1750 varas to stake from which a pecan bears, etc.; thence south 500 varas to a stake from which a mesquite bears south, etc.; thence west 800 varas, a pile of stone, giving bearings; thence south 400 varas to a pile of stone, from which a hackberry bears north, etc.; thence west 3200 varas a stake from which an elm bears north 83 degrees east 80 varas; thence north 4851 varas to pile of stone from which a china bears south, etc.; thence east 5750 varas to stake giving bearing trees; thence south 3267 varas to place of beginning. The field notes in the patent to the Barnwell survey, also introduced in evidence, made that survey begin at the southwest corner of the Bruner, as before explained, running thence west, north, and east 1900 varas to the west line of the Bruner, and thence to the beginning.

It appears from evidence introduced by the defendants, that by beginning at the southwest corner of the J. M. Rine survey, which is an established and identified corner, about six miles east of the Bruner, and running thence north to the southeast corner of the Moore survey, and west 3700 varas to the southwest corner of the Mathis; thence south 400 varas to southeast corner of the Lindsay; thence 1980 varas west to the southwest corner of the Lindsay, which is the beginning corner of the Bruner, and then running the course and distance called for in the field notes of the George Bruner, none of the objects were found as called for in the field notes of that grant, and that so run by course and distance the southwest corner of the Bruner would be about 490 varas east of the Barnwell. Constructing the Bruner survey as above indicated, defendants claim that the southeast corner of the Barnwell and southwest corner of the Bruner is not a common corner. And that by beginning at the southwest corner of the Henry Smith survey, which is the northwest corner of the Barnwell, and is a recognized corner, and thence running south 1900 varas for southwest corner of the Barnwell, thence east 1900 varas, nothing was found to identify that corner; and this last corner, thus located by course and distance as called for in the field notes, will be 490 varas west from the southwest corner of

the Bruner as above located by course and distance. This is the substance of the testimony of the surveyor J. P. Hart, and upon which the defendants' theory is predicated, that the vacancy between the surveys exists as contended. But this witness stated, that in so running the Bruner survey, he allowed nothing for the excess in running west the intervening surveys between the Rine southwest corner and the southwest corner of the Bruner, and that there was an excess of seventy varas to the mile allowed in the surveys or many of them made on the Little Wichita River, and by allowing this excess the difference of 490 varas would not exist.

C. B. Patterson testified, that he had operated as a surveyor in Archer County for the past ten years. Had surveyed the Bruner and Barnwell tracts three times at least. From his experience and work in that section, he found that from sixty to seventy varas to the mile were allowed in all these surveys, on the Little Wichita, in distance, east and west. He commenced at the southwest corner of the Rine, ran the course and distance of the intervening surveys to the southeast corner of the Castleberry, and from there to the southwest corner of the Lindsay (the beginning corner of the Bruner), adding the proportional distance to the line of seventy varas to the mile. He then ran from southwest corner of the Lindsay 684 varas, thence west 1750 varas, at which point a pecan is called for; but without adding the proper excess it was not reached. He says, "by adding the proportional excess it brought me into the valley of the creek, where I found a number of large pecans, but no marked trees." He further testified, that at the next place called for as marked, "I found two wild chinas as called for at the northwest corner of the Newton County school land league number 64 in this line; that is the south line of the Bruner survey. These chinas were not marked but were defaced on the side next to the corner. I continued west in all 3200 varas on this line, adding excess as hereinbefore explained. This brought me to the southwest corner of the Bruner survey, and on the west side to an elm grove, which corner calls for an elm north 83 degrees east 80 varas. From this corner I connected with the northwest corner of the S. H. Barnwell survey and found that I could reach it by adding the same proportional excess. The northwest corner of the Barnwell is well identified by an elm marked X bears west 250 varas. This is the only corner I could positively identify after leaving the John M. Rine corner."

He then located the Barnwell survey at the southwest corner of the Bruner, as the field notes of the former called for. Hart, the county surveyor, testified, that by allowing the excess as testified to by Patterson, he "came out within thirty varas of where Patterson did." Patterson's evidence was, in all material matters, corroborated by W. M. Coleman, who was with him when he made the survey. Patterson further testified, that he found a "wild china as called for at the north-

west corner of the Bruner survey, as a witness tree, but there were no marks visible on it."

The charge requested by the appellant (plaintiff below) ought not to have been given in the form requested. But it suggested the submission to the jury of a phase of the case which both the law and the facts authorized. As asked, the instruction was objectionable, because it was upon the weight of the evidence.

The Barnwell and Bruner surveys were made more than thirty years since, and were contiguous surveys according to their field notes. The defendant's affidavit claiming, in effect, that there was a vacancy between them was dated in February, 1888. The appellee contends, that by beginning at the southwest corner of the Rine, and running the intervening surveys by course and distance as called for, none of the objects are found called for in the Bruner grant, and that its southwest corner will be 490 varas east of the southeast corner of the Barnwell. Many of these objects are found, and the southwest corner of the Bruner and the southeast corner of the Barnwell is a common corner, and the west line of the former is the east line of the latter, by beginning at the southwest corner of the Rine and running said intervening surveys, and also the Bruner according to its field notes, and allowing the usual excess of seventy varas to the mile allowed in making these surveys. This excess of 490 varas between the Bruner and Barnwell surveys is the only circumstance relied on as establishing the fact that the call in the field notes of the Barnwell for the southwest corner of the Bruner was a mistake.

In Freeman v. Mahoney, 57 Texas, 626, in discussing a similar question, the court say, that "He who at this late day, * * * when those who originally surveyed them have passed away, makes a location between grants which surveyors who originally made them more than thirty years ago under their official oaths declared to be contiguous, should come prepared with evidence which will clearly show that such declarations were made in mistake, and such testimony must consist of something more than that one or both of the grants will be slightly in excess of the area called for to make such declarations good." In that case there was a discrepancy of 240 varas in a distance called for as the width of the Chambers grant, which was 5000 varas. "In a line of such length," it was said, "this discrepancy ought not to be given conclusive effect," etc. In the case before us, the distance run from the southwest corner of the Rine survey to the southwest corner of the Bruner was about 11,450 varas.

While, as stated, the instruction in the form requested ought not to have been given, the jury should have been charged, in substance, however, that the presumption was that the Bruner and Barnwell surveys were made by the surveyor as described in the field notes of these grants, respectively, and that the burden was upon the party claiming

that they were not surveyed on the ground, as certified to officially by the surveyor, or who now challenges the correctness of the same, to establish that fact. It seems to us that this case comes within the principle announced in the case cited, and that it is decisive of this appeal.

We think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted May 3, 1892.