## T. P. Yoacham v. McCurdy & Daniels.

Decided November 30, 1901.

**1.—Survey—Boundary Line—Rule as to Course and Distance.**

The rule that course and distance will be made to yield to natural objects called for can have no application in cases where the natural object is left indeterminate and incapable of being applied to the call.

**2.—Same—Charge on Weight of Evidence—Excess in Survey.**

Where the location of an unmarrked corner of a survey could be determined only by its proximity to a branch called for in the field notes, and the evidence as to the actual distance from the beginning corner at which the branch could be found was conflicting, plaintiff's evidence showing that to reach it requirred an extension of the south line much beyond its proper length, which would make an excess in the survey, it was error as on the weight of evidence for the court to charge that "the fact that the lines and corners of the survey as originally run and noted on the ground include a greater or less quantity of land than is included in the field notes of the patent becomes immaterial further than as a circumstance to be considered," etc.

**3.—Same—Cases Distinguished.**

The rule on this point announced in Scott v. Pettigrew, 72 Texas, 321, held not in conflict with Ayers v. Harris, 77 Texas, 108.

**4.—Homestead Donation—Constitutional Law—Scrap Land Act of 1889.**

The constitutional provision (Constitution, article 14, section 6) donating to every head of a family without a homestead 160 acres of land upon the sole condition that he settle upon and occupy it for three years and pay the office fees, renders void so much of the first section of the Act of April 15, 1889 (the "scrap land" act), as makes the right dependant on the furtᴀer condition that the land be not unwittingly inclosed by a bona fide settler who may desire to purchase it, and is given a six month's preference to do so.

**5.—Practice on Appeal—Certifying Question.**

A court of civil appeals is not required to certify a question which has already been decided by the Supreme Court, although its decision be in conflict with the ruling of another one of the courts of civil appeals.

Appeal from Bosque. Tried below before Hon. William Poindexter.

*J. L. Scott* and *N. R. Morgan,* for appellant.

*Wm. M. Knight,* for appellee.

CONNER, Chief Justice.—On May 1, 1894, appellant made actual settlement upon the 116 acres of land involved in this suit, in all particulars complying with the law conferring upon the head of a family the right to acquire a homestead upon unappropriated public lands. He was evicted therefrom by appellees, claiming to own the land as a part of the C. O'Connor survey, of which appellees were the owners, and appellant thereupon instituted this suit.

As claimed by appellant the land in controversy constitutes part of the unappropriated public domain of Texas situated between the O'Connor 320-acre survey on the west and the Henry Billings survey on the east. Appellee Daniels was an actual settler upon adjacent land, which, together with the O'Connor survey and the land in controversy, had been

continuously inclosed by him as a pasture prior to and ever since appellant's settlement as stated. Appellees prayed that, if it should be found that the land in controversy was public land, and not included within the boundaries of the O'Connor survey as claimed by them, that appellee Daniels be decreed to have six months from the rendition of the judgment within which to purchase the same, and that his right to do so within such time be declared prior to the right of appellant to acquire a homestead donation thereon.

As called for in the field notes, the O'Connor was a rectangular survey of 320 acres, its north and south lines being 950 varas long and its east and west lines 1900 varas in length. The beginning corner was its southwest corner, which alone seems to have been identified as originally established. From the beginning corner the calls were as follows: "Thence N. 60 E., 895 vrs. to a branch, 950 vrs. to the S. E. corner in prairie; thence N. 30 W., 260 vrs. to a branch 1900 vrs. to the N. E. corner a mound; thence S. 60 W., 635 vrs. to a creek running south, 950 vrs. to the N. W. corner in prairie; thence S. 30 E., crossing a creek running south, 1900 vrs. to the place of beginning. Surveyed September 28, 1846."

The south and east lines can not be identified by any marks of the original surveyor; the principal contention being whether, as insisted upon by appellant, there was a branch 895 varas from the beginning corner, as called for in the field notes, or whether, as contended for by appellees, the branch called for on the south line was to be reached only by an extension of said line to a point 1295 varas from the beginning corner.

We think it evident from the record that the conclusion reached on the trial was that the land in controversy is included within the boundaries of the O'Connor survey; and we also think it likewise evident that the jury, in fixing the south and east lines of the O'Connor survey so as to include the land in question, was controlled largely by the call for the branch on the south line. The evidence as to the identity of this branch was sharply conflicting, if in fact not strongly preponderating in favor of appellant's contention. In this view of the record are we to consider appellant's first assignment of error to that part of the court's charge, wherein the jury were instructed: "That the fact that the lines and corners of the O'Connor survey as originally run and marked upon the ground include a greater or less quantity of land than is included in the field notes of the patent, becomes wholly immaterial further than as a circumstance to be considered by you for what you may deem the same worth to aid you, if it does so, in connection with all the evidence in the case, in following the footsteps of the original surveyor, and in fixing the eastern boundary of said survey as originally located."

We are of opinion that the objections to this charge as upon the weight of the evidence, and as prejudicial to appellant, must be sustained. Indeed, this charge in substance was directly condemned in the case of Scott v. Pettigrew, 72 Texas, 321. It is insisted, however, that

that case is, in effect, overruled in Ayres v. Harris, 77 Texas, 108, but we do not so construe the opinion. While it is true that the charge attacked in Ayers v. Harris is substantially the same as in the Pettigrew case, and as in the case under consideration, and while it is further true that the Supreme Court refused to reverse the judgment in favor of Harris and others because of the charge, it was nevertheless criticised and was held nonprejudicial merely under the facts of the Harris case, the judgment not including the quantity of excess claimed by the plaintiff. In the case now before us the large excess insisted upon by appellees in the O'Connor survey was affirmed by the verdict and judgment. The south and east lines are unmarked and unidentified save by the call for a branch, which the evidence by no means certainly fixes in accord with appellees' contention. As a rule course and distance will be made to yield to natural objects called for; but the rule can have no application in cases where the natural object is left indeterminate and incapable of application to the call with reasonable certainty. We think under the circumstances of this case, as was said in the case of Scott v. Pettigrew, 72 Texas, 329, "The fact of excess in area should have been left to the jury to be considered in connection with all other evidence, without suggestion from the court as to what weight it was entitled to in determining so much of the boundaries as were not identified by marks and objects upon the ground."

Error has also been assigned to that part of the court's charge relating to the claim of appellee Daniels to priority in right of acquisition, as stated in the beginning of this opinion, and in view of another trial we have concluded to briefly notice the question presented.

The court, in substance, charged the jury that if they should find the land in controversy vacant, and not part of the O'Connor survey, and that prior to and since appellant's settlement appellee Daniels was a bona fide actual settler upon adjacent lands, having the land in dispute actually inclosed without knowledge of its vacant character, that the jury should find that appellee Daniels had the right to purchase the same within six months from the date of the trial.

The amended section of what is commonly designated as the "scrapland act," with which this charge accords, is as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas: That any person desiring to purchase any of such appropriated public lands situated in organized counties of the State of Texas as contain not more than six hundred and forty acres, appropriated by an act to provide for the investment of the proceeds of such sale, approved July 14, A. D. 1879, may do so by causing the tract or tracts which such persons may desire to purchase to be surveyed by the authorized public surveyor of the county in which such land is situated. The provisions of this act shall not be so construed as to prohibit the right of acquiring any of said lands under chapter 9, title 79, Revised Civil Statutes, within the bounds of the reservation here made; but any person shall have the same right of acquiring a homestead within this reservation, under the home-

stead donation laws of this State, as he may have had prior to the passage of this act; provided, where it is ascertained that any of such lands as contain not more than six hundred and forty acres is situated within the inclosed lands of any actual bona fide settler and resident of this State, such settler shall have the preference right of six months from the time that the same shall have been declared by the Commissioner of the General Land Office to be vacant and subject to sale, to purchase as much of said land as may be embraced within his inclosure; provided, that said preference right shall not be given to any person who has inclosed any vacant land, knowing the same to be vacant at the time of inclosing the same. Approved April 5, 1889." See Laws 1889, p. 48.

Article 14, section 6, of the Constitution, provides that: "To every head of a family without a homestead there shall be donated one hundred and sixty acres of public land upon condition that he will settle and locate on said land and occupy the same for three years and pay the office fees thereon."

In our judgment, the act quoted adds to and imposes conditions upon the constitutional right of heads of families to acquire a homestead upon unappropriated public lands that is unauthorized, and within the inhibition imposed by article 1, section 29, of the Constitution. The enumeration in the Constitution of the conditions upon which the donation shall be granted, by a familiar rule of construction, excludes other conditions not named. If vacant, the head of a family without homestead is, without further restriction, entitled to 160 acres of any unappropriated land upon compliance with the conditions imposed by the Constitution. The law quoted in effect makes the right dependant upon' the further condition that the land be not unwittingly inclosed by any bona fide actual settler of Texas who shall desire to purchase it.

The general policy of our laws, constitutional and legislative, has favored the homesteader, and not the person who, knowingly or otherwise, has inclosed and used unappropriated lands without authority, and, as stated, we are of the opinion that the Legislature in the instance under consideration transcended its powers. Cooley Const. Lim., 6 ed., pp. 78, 79. Appellant met all conditions interposed by the Constitution, and established his right as a homesteader, if the land was vacant prior to any effort on the part of Daniels to exercise the privilege of purchaser, but by the charge appellant's right was limited by the subsequently asserted right of appellee Daniels, and if we are correct in our construction of the Constitution it follows that the charge was erroneous as assigned.

In what we have said, however, no application of the rule announced in Hogue v. Baker, 92 Texas, 58, has been made, for the reason that the facts upon which that decision was predicated have neither been alleged nor established herein.

For the error in the charge of the court first mentioned the judgment is reversed and the cause remanded for a new trial.

                                    *Reversed and remanded.*

## ON MOTION TO CERTIFY.

CONNER, CHIEF JUSTICE.—This is a boundary suit, in which the judgment below was reversed because of a charge by the trial court the same, in substance, as was condemned in the case of Scott v. Pettigrew, 72 Texas, 331. We are now requested to certify the question involved, because it is insisted that our conclusion is in conflict with the opinion of the Supreme Court of Texas rendered in the case of Ayres v. Harris, 77 Texas, 108, and with the decision of the Court of Civil Appeals for the First District rendered in the case of Branch v. Simmons, 48 Southwestern Reporter, 40.

We retain the conclusion originally expressed that the case of Scott v. Pettigrew was not overruled by the case of Ayres v. Harris on the point involved, and, while it would seem that the decision in Scott v. Pettigrew and the conclusion reached by us based upon that opinion is in conflict with the decision of the Court of Civil Appeals mentioned, we nevertheless are of the opinion that the conflict, if any, will not authorize the certificate requested under the Act of May 9, 1899, regulating the subject. This act provides: "That in any cause that is now pending or may hereafter be pending in any of the courts of civil appeals of the several supreme judicial districts of the State of Texas, any one of said courts may arrive at an opinion in the decision of any of said causes that may be in conflict with the opinion heretofore rendered, or hereafter rendered, by some other Court of Civil Appeals in this State on any question of law, and said Court of Civil Appeals refuses to concur with the opinion so rendered by said other Court of Civil Appeals, it shall be the duty of said court failing to concur with the opinion in conflict with the opinion so arrived at by said court, through its clerk, to transmit the question of law, duly certified to, involved in the cause wherein said conflict of opinion has arisen, together with the record or transcript in said cause, to the Supreme Court of the State of Texas, for adjudication by said Supreme Court."

We can not think it was intended by the Legislature to require of us the certification of a question already determined by the Supreme Court. In our judgment the charge discussed in the original opinion herein was substantially the same charge expressly held erroneous in the case of Scott v. Pettigrew, and inasmuch as, in our judgment, this case has not been overruled by the Supreme Court, we conclude that we are not authorized by the act of the Legislature quoted to certify the question because of the asserted fact that our conclusion is in conflict with the decision of the Court of Civil Appeals for the First District. For the same reason we do not feel warranted in certifying the question of our own motion under article 1043, Revised Statutes.

The motion to certify is therefore overruled.

*Overruled.*

Writ of error refused.