## SCHNACKENBERG et al. v. STATE et al. (No. 6523)

(Court of Civil Appeals of Texas. San Antonio. March 9, 1921. On Motion for Rehearing, March 30, 1921.)

1. **Public lands** ⊜176(2)—**Construction of grant for court.**

The construction of a grant as written is a question of law for the courts, unless some fact is raised.

2. **Public lands** ⊜175(1)—**Evidence held to show survey was not on unappropriated land.**

In suit by the state and others to recover title to land on the theory that before its attempted appropriation the land was vacant and unappropriated land, evidence *held* to show that the land, prior to its attempted location, was appropriated public land, and that no vacancy existed, as claimed, between other surveys and the river bank, where such location might be made.

3. **Boundaries** ⊜33—**Presumption favors surveys made as called for by field notes.**

The presumption is in favor of surveys that were made as called for by the field notes, and the burden is on the party attacking to show they were not so made.

4. **Boundaries** ⊜6—**Land may be run in reverse direction if difficulty is met with in one direction.**

If in running lands in one direction a difficulty is met with, and all the known calls in the survey can be met with by running in the reverse direction, this may properly be done.

5. **Public lands** ⊜176(2)—**Patent carries prima facie rights.**

The patent carries with it the prima facie title to the land, and one attacking it must show a superior right.

6. **Public lands** ⊜175(1)—**Patented lands cannot be relocated.**

Land described in a patent cannot be subject to future location.

7. **Boundaries** ⊜3(4)—**Calls for natural objects such as a river, prevail over call for artificial markers.**

Calls for natural objects, such as a river, do not yield to calls for artificial stakes or movable rocks or stones, in absence of evidence that there was no river at the place called for, or that there was a mistake in the call for the river.

8. **Boundaries** ⊜3(4)—**Location of survey by surveyor held improper.**

It was improper for a surveyor to begin from a corner and then undertake to locate a survey by course and distance only, ignoring all calls for natural objects, and when he reached a river to fail to run it with its meanders, but to regard only course and distance, ignoring natural calls for the river.

Appeal from District Court, Travis County; George Calhoun, Judge.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by the State of Texas and others against J. L. Schnackenberg and others. From judgment for plaintiffs, defendants appeal. Reversed and remanded.

Nicholson & Felder, of Wichita Falls, and White, Cartledge & Wilcox, of Austin, for appellants.

C. M. Cureton, Atty. Gen., and E. F. Smith, W. W. Meachum, Jr., and Tom L. Beauchamp, Asst. Attys. Gen., and W. F. Schenck, of Lubbock, for appellees.

COBBS, J. This suit was filed in Travis county on the 2d day of July, 1919, by the state of Texas, joined by John T. Smith, A. S. Newburg, and George W. Butler, against appellants to recover title to the following described tract of land, to wit:

"Patent to A. A. Durfee survey: 331 acres of land situated in Wichita county, on the waters of Red river, about 18 miles N. 30° W. from Wichita Falls, beginning at the N. E. corner of F. W. Huseman's survey and the S. W. corner of a survey of 1,280 acres for Lucinda Meadow thence N. 8° W. with W. line of said Meadow survey 1,309 vrs. a stake on bank of the river, the N. W. corner of said Meadow; thence up the river with its meanders S. 66½° W. 526 vrs., S. 42° W. 1,350 vrs. S. 40° W. 1,175 vrs. a stake on the bank of the river in the N. line of L. Powell's survey; thence N. 68° E. 350 vrs. the N. S. corner of said Powell's survey an elm tree bear 38¼° W. 143 vrs.; thence N. 71° E., 2,115 vrs. the N. E. corner of said Huseman and beginning. Bearings mk. X. Dated May 6, 1879."

The alleged interest of John T. Smith was by virtue of a corrected permit No. 3,027 to prospect for petroleum and natural gas that may be found within and beneath the surface of the above-described land by virtue of chapter 83 of an act of the Legislature approved March 16, 1917. On or about the 24th day of April, 1919, John T. Smith assigned said corrected permit with all his rights to A. S. Newburg and George W. Butler, the present legal and equitable owners thereof, who have applied for a second permit. Said parties join the state in said suit.

E. L. Lancaster, T. H. Harbin, and C. J. Barnard filed disclaimers. Responsive pleadings were filed by all other defendants.

The case was tried with a jury upon a general charge, and the jury returned a verdict as follows:

"We, the jury in the case, the State of Texas v. J. L. Schnackenberg et al., find from the evidence in this case that the land described in plaintiff's petition is not embraced within the boundaries of the patent issued by the state of Texas to F. W. Grassmeyer, assignee of F. W. Huseman, and find a verdict for the plaintiff for the land in controversy."

From which judgment the following named defendants: J. L. Schnackenberg, Emilie Schnackenberg, G. P. Holtzen, Anna Holtzen, C. P. Sheldon, and L. H. Lawler, trustees of the Sky-Line Oil Co., and U. D. Goodson, C. D. Lacy, Guy T. Warren, Mrs. Bettie Rowles, Mrs. M. J. Denning, Mrs. Allie Rowland, Robert Rowland, Mrs. Dollie M. Ralls, John R. Ralls, J. M. Martin, F. W. Caldwell, Mrs. Frank Carmichael, Earl Carmichael, J. W. Caldwell, C. F. Richards, Lonnie Richards, Lilia Richards, J. L. White, Mrs. Stella Trice, B. W. Trice, Mrs. Minnie May Gilvin, John B. Gilvin, and Mrs. Meota Oden—filed their appeal bond, and now bring this cause to this court for revision.

This is conceded to be, as it is, a boundary suit. Without quoting the somewhat lengthy and numerous assignments of error and propositions thereunder, we will here state what we conceive to be the vital questions raised, both of law and fact, that must determine the case. The theory of the state is that the wedge-shaped piece of land described, before its attempted appropriation, was a piece of vacant and unappropriated land lying north of the F. W. Huseman and between the A. A. Durfee survey, containing about 52 acres. This proposition is strenuously denied by appellants, who assert the land was not public, unappropriated domain, and was not subject to such location.

It now becomes important to locate and identify the lines of the various surveys in accordance with the well-understood principles of law that control such locations.

The undisputed evidence shows the location of Red river as it lies north of all the surveys necessary to consider and is called for in a number of the surveys as the boundary line.

Field notes of a 320-acre survey in the name of T. E. & L. Co. No. 818 call for the S. bank of Red river, beginning at the upper N. W. corner of No. 812 (Elizabeth Stanley), stake in river bottom, for bearing trees named; thence up the river. Another call for west line of No. 812. This survey was made by R. F. Luckett, surveyor, May 8, 1861. Now the Elizabeth Stanley survey No. 812 lies directly east of the above survey, calling for the river as its northern boundary, has a common corner and common boundary line, and was made at the same time, by the same surveyor, and its location corner is identified on the river. The same surveyor at the same time located directly west of and adjacent to the survey No. 818 a survey in the name of William Droddy, lying south of the river, which was its northern boundary, tied to and calling for said survey No. 812 for beginning. The same surveyor at the same time located the Lewis Powell survey No. 820 on the south bank of the river. Beginning at the N. W. corner of survey No. 819 (William Droddy), stake, elm, 18 inches 38¼° W. 143 varas, and elm and hackberry bears S. 39½° W. 163 varas; thence up the river, etc., with calls

for bearing trees; thence south 4,360 varas a stake prairie; thence east 1,165, stake in west line of survey No. 819, north 4,947 to beginning.

These surveys, with plats and field notes, were returned to and filed in the General Land Office in proper time by R. F. Luckett, the surveyor who made them all in 1861. They all show Red river platted on the map, and called for as the common northern boundary line. They are all adjacent, and call for each other. The boundary lines are practically in common, and extend from the river in practically straight lines, and are so represented by all maps on file and use in the General Land Office as common and adjacent surveys.

For some reason the field notes of the William Droddy survey have been lost from the Land Office, and but for its position on the maps and calls for it by its two companion surveys on either side the position formerly occupied by it might not be identified. At any rate its place is now occupied, in the northern part at least, by the F. W. Huseman survey No. 819, which is located on the ground in part, but wholly on the northern part just south of Red river beginning at the N. W. corner of survey No. 818, Texas Land & Emigration Company; thence south 4,845 varas, stake in prairie; thence west 1,900 varas to a stake in E. B. line of Lewis Powell's survey; thence north with said Powell 3,925 a stake in Red river; thence down said river with its meanders N. 64° E. 211 varas to the beginning. It was dated February 24, 1874.

On the 24th and 25th days of February, 1886, the Durfee survey was located, and thereafter patented, to wit:

"Patent to A. A. Durfee survey: 331 acres of land situated in Wichita county, on the waters of Red river, about 18 miles N. 30 W. from Wichita Falls, beginning at the N. E. corner of F. W. Huseman's survey and the S. W. corner of a survey of 1,280 acres from Lucinda Meadow; thence N. 8° W. with W. line of said Meadow survey 1,309 vrs. a stake on bank of the river the N. W. corner of said Meadow; thence up the river with its meanders S. 66½ W. 526 vrs. S. 42° W. 1,350 vrs. S. 40° W. 1,175 vrs. a stake on the bank of the river in the N. line of L. Powell's survey; thence N. 68° E. 350 vrs. the N. S. corner of said Powell's survey an elm tree bear 38¼° W. 143 vrs.; thence N. 71° E. 2,115 vrs. the N. E. corner of said Huseman and beginning. Bearings mk. X. Dated, May 6, 1879."

It is worthy of note when the Huseman survey was put in on the place, in part formerly occupied by the abandoned Droddy survey, the same number was also given it as represented the Droddy location, to wit, 819.

The testimony is overwhelming that Luckett made this system of surveys in 1861, and returned proper field notes to the Land Office, calling for the Red river as the northern boundary, together with a map representing Red river thereon as lying wholly north of said surveys, and evidently intended thereby the river should be their common northern boundary line, and to appropriate all the land lying south of that river embraced within the boundaries of the several surveys, not intending that there should be any vacancy there. No other inference may be drawn from this written record testimony which the law required to be placed in the General Land Office to segregate it from the mass of public domain.

For some reason, which we are not here called upon to pass on, it appears in 1886 the surveyor of Wichita county located, surveyed, platted, and returned to the General Land Office surveys along the south bank of Red river, north of the original Luckett surveys under discussion, in the name of B. F. Blount, A. A. Durfee, and others.

The field notes and plats of the A. A. Durfee purport it to be located between the south bank of said river and the F. W. Huseman. As stated, the only theory upon which such location can be made must be upon the supposition that it was at the time unappropriated public domain. It is not necessary to discuss their validity here, except in so far as it is applicable to do so with respect to appellees' claim of a vacancy. It is evident at that time, many years after the location of the Huseman survey, it was supposed the Huseman did not go to the river, and the Durfee undertook to appropriate that land, as it called to begin, situated on the waters of Red river, beginning at the N. E. corner of F. W. Huseman's survey and the S. W. corner of 1,280 acres for Lucinda Meadow; thence N. 7° W. with W. line of said Meadow survey 1,309 varas a stake on bank of the river the N. W. corner of said Meadow; thence up the river with its meanders S. 66½° W. 526 varas S. 42° W. 1,350 varas S. 40° W. 1,175 varas a stake on the bank of the river in the N. line of L. Powell's survey; thence N. 68° E. 350 varas the N. S. corner of said Powell survey an elm tree bears 38¼° W. 143 varas; thence N. 71° E. 2,115 varas the N. E. corner of said Huseman and beginning. It was tied to Red river, Lewis Powell, the Huseman, and the others. This survey was patented in 1889. If the Huseman survey did not go to the river with the Droddy, as was the evident intention of the surveyor, Luckett, to do in 1861, whose field notes in part and location are now taken by the Huseman, which appropriated it, then indeed the Durfee survey would. It called for the same Lewis Powell survey that the Huseman did, and from same point and corner identical with the Huseman in its calling for its south boundary line as the northern boundary line of the Huseman survey. So that between the Huseman and

Durfee no land was left vacant. There is in this record data by which the Huseman survey must be located. It has a common corner on the river with the Lewis Powell survey. The eastern and western boundary line both of the Lewis Powell and the Huseman surveys are common, and cannot be torn apart by any locator. By that we do not mean to say that the state may not sue to recover excesses in surveys in proper cases; but the call for the lines of adjacent surveys must be regarded in the absence of some identifying fixed call to show a contrary purpose where the boundary lines of the adjacent survey can be identified and established, as in this case it was shown they could be. The north line of the Huseman and the N. E. corner are tied with the survey No. 818, and its eastern boundary is likewise common with it. In the Huseman survey there is but one call for a natural object, and that is the Red river on its north. Its beginning call is N. E. corner of survey No. 818. That survey calls for its beginning upper or ' N. W. corner of 812 (Elizabeth Stanley), stake in river bottom with bearing trees and its second corner, calling thence up the river along its meanders 672 varas for a stake and bearing tree; thence south its distance, so the corner is on the river and with its north line with its meanderings and that corner and this boundary line fixes the eastern boundary line of the Huseman. The Huseman is tied on the east by 818, on the north by the river, and on the west by the Lewis Powell. There is no other fixed point to establish this survey, except by its calls for its adjacent surveys and call for the river. Find No. 818, and you have its beginning and eastern boundary. But if that cannot be done, find Lewis Powell, and you have its western line and N. W. corner, to which point the surveyor must regard and go to if it can be found, to be observed in constructing the survey. Find the river, and you have its N. E. and N. W. corners, tied on the river for its northern boundary line.

The surveyor, Dod, who located appellees' survey, did not go to the Lewis Powell survey. In running the south line he stopped with the distance and ignored the call for the boundary line of the Powell, and did not follow it to its N. E. corner, the N. W. corner of the Huseman, for if he had he would have found no vacant land for appellees. This west line, which is the common line of the Powell survey and the northwest corner of the Huseman survey, is designated in the field notes and the patent as the intersection of the east line of the Powell survey, with the bank of Red river as the only corner of said Huseman survey that is marked or can be located on the ground, fully identified and definitely fixed and located by the large elm bearing tree. The surveyor for the state, Capt. Dod, stated he knew this corner to be the best identified and established corner in that whole section of the country, in referring to it as the northeast corner of the Lewis Powell survey. He admitted he could easily find the east boundary line of the Lewis Powell survey by running a line south from its northeast corner, now marked by a stone in the ground on the bank of the river, and until a few months ago by the original elm bearing tree. It is inconceivable why he failed to do this, and why he did not locate the east boundary line for the west boundary line of the Huseman survey in accordance with its calls for it, instead of tearing it away from its adjacent survey and establishing a new western boundary line for it, creating a strip of land between the two in defiance with all the written calls, maps, and data in the Land Office, to the contrary. This kind of surveying, however, is explained by his own testimony, wherein he says:

"I followed the course and distance correctly, and absolutely ignored calls for anything else in making that run. I will not say I ignored them in running. Of course, I examined them in running my line. I did not follow the call for the east line of the river."

[1] Calls for a river or along the river or with its meanders mean in this case one and the same thing. No vacancy can be found lying between such calls and the river. When such calls appear in a grant there is no fact to be found, and the findings of a jury are wholly unnecessary. The construction of the language of a grant as written is a question of law for the courts, unless some fact is raised, such as the river was called for by mistake. Burkett v. Chestnutt, 212 S. W. 271; Stark v. Stout, 174 S. W. 1014. The case of Rosetti v. Camille, 199 S. W. 527, opinion by the Chief Justice of this court, in discussing questions very similar to those in this case, is very much in point here.

[2] This is not a suit by the state to establish an excess in a grant, to cancel a patent, or to reform a grant so as to reconstruct it and partition out the excess, if any. Surveys, field notes, and plats in the General Land Office are evidence of title that the law requires to represent appropriated land, and such land is not subject to appropriation by subsequent locators. But this suit is to establish a vacancy to fix boundary lines. It is too plain for any kind of controversy that such evidence of title involves questions of law. The Huseman survey calls to go to the river and ' run along its meanders. This means Red river is its north boundary line. There is no dispute that such a river exists, and no one claims that the Huseman survey is void, or that the river was called for by mistake, or did not exist. In this case, however, it is shown that the Durfee survey has been subsequently located north of the Huseman, calling for the river for its north boundary and the north line of the Huseman for its

south boundary. All the testimony of any value, except the testimony of the surveyor, Dod, whom it is shown held tenaciously to calls in the field notes and ignored the call for the river and calls of the Powell survey and the like, leaves no question of fact to be passed upon, for the testimony secured from the General Land Office, which the law requires to be kept there, and was there prior to the attempted location of the land in controversy, together with other testimony offered on the trial, practically undisputed, shows it appropriated public land, and that no vacancy existed. Boon v. Hunter, 62 Tex. 582; Finberg v. Gilbert, 104 Tex. 539, 141 S. W. 82. If the Durfee survey is recognized as valid, then it takes all the land lying north of the Huseman, being prior to appellees' location, and left no vacancy north of the Huseman for which it calls.

[3] Presumption is in favor of surveys that were made as called for by the field notes, and the burden is upon the party attacking to show they were not so made. Worthington v. Boughman et al., 84 Tex. 480, 19 S. W. 770.

[4] If in running lands in one direction a difficulty is met with, and all the known calls in the survey can be met with by running in the reverse direction, this may be properly done. Ayers v. Watson, 137 U. S. 584, 11 Sup. Ct. 201, 34 L. Ed. 803; Reast v. Donald, 84 Tex. 648, 19 S. W. 795.

[5] The patent carries with it the prima facie title to the land, and one attacking it must show a superior right. Johnson v. Eldridge, 49 Tex. 507.

[6] The land described in the patent cannot be subject to future location. Adams v. Railway Co., 70 Tex. 252, 7 S. W. 729.

The contention of appellee is there is no effort to locate upon land granted to appellants, but upon vacant land outside of the grant. That cannot be true, for the field notes made for appellee puts them in direct conflict with appellants' claim. We understand and will follow the rule laid down in Gerald v. Freeman, 68 Tex. 203, 4 S. W. 256; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317; Weston v. Meeker, 109 S. W. 461.

[7] When the calls in field notes are for an unidentified open line of some other survey, with no natural or artificial objects by which it could be identified itself, to find which would require that survey to be wholly surveyed by running all its various lines according to course and distance, this would not be required. But that does not apply here, for when the Huseman survey calls for a stake for its southwest corner in line of Powell survey, it does not stop there, but turns north and calls to run north with said Powell 3,925 varas, a stake in bank of Red river. Whatever excess, if any, in the calls of the Huseman may be, it calls for the river. The Lewis Powell survey can itself easily be identified by its calls for the river and natural objects, as can survey No. 818. All calls are to corner on the river, and these calls cannot be ignored. It means what it says, to go to the point on the river, when it calls for natural objects such as a river, which are certain, and they will not yield to calls for artificial stakes or movable rocks and stones, in the absence of evidence to show there was no river at the place called for, or that there was sufficient evidence to induce the belief that there was a mistake in the call for the river. Johnson v. Archibald, 78 Tex. 96, 14 S. W. 266, 22 Am. St. Rep. 27; Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304; Barnard v. Good, 44 Tex. 638; Yoacham v. McCurdy, 27 Tex. Civ. App. 183, 65 S. W. 213. It cannot be pretended the river was called for by mistake. All of the surveys call for it, and the plats and maps all show it as the northern boundary of the several surveys, of which the Huseman is one and similarly situated.

From the Stanley survey, No. 812, the beginning point of these surveys, cornering on and calling for the river, No. 818, the Huseman survey, No. 819, tying to said No. 818, cornering on the river, on down to the Lewis Powell survey, 820, all adjoining and calling for each other (substituting Huseman for Droddy), and all calling for the river as their boundary on the north, demonstrate there was no vacant land where appellee attempted to locate. If there was any vacancy prior to appellees' location, it had all then been appropriated north of the Huseman by the Durfee location.

The undisputed written and oral testimony establish these facts.

[8] Dod, the surveyor, got his beginning from a rock that Mr. Henderson, surveyor, told him was the N. W. corner of the Stanley No. 812, and the N. E. corner of survey No. 818, and then undertook to locate the survey No. 819 (Huseman) by course and distance only, ignoring all calls for natural objects, and when he got to the river did not run it with its meanders, only regarding course and distance, ignored natural calls for the river. This he could not do. Rosetti v. Camille, 199 S. W. 527.

We do not believe the court gave correct instructions to the jury that would aid them in returning a verdict, but they are of no importance to be considered in this case, as there was no independent material fact for them to find.

Appellees have wholly failed to establish their location to be to land outside of the boundaries of the Huseman, and thereby failed to establish their case. The court, at the conclusion of the testimony, should have instructed a verdict for the appellants.

The judgment of the court is reversed, and here rendered for appellants.

On Motion for Rehearing.

On motion for rehearing our attention has been called to the error in the description

given of the land sued for on the first page of the opinion. That description is withdrawn and in lieu thereof the following should be inserted, to wit:

Situated in Wichita county, Texas. "Beginning at a stone, the northwest corner of the T. E. & L. Company survey No. 818; thence S. 64° W. with the N. line of the F. W. Huseman survey to the E. line of the Lewis Powell survey, approximately 2,250 varas; thence N. with the E. line of the said Powell survey, being a distance of approximately 290 varas; thence following the S. line of the A. A. Durfee survey N. 71° E., with said line, approximately 2,138 varas to the place of beginning, and containing 52 acres more or less."

We see no reason to change our views as stated in the opinion as to the law governing such locations. Most surveyors are well acquainted with those general rules of surveying laid down in the cases of Booth v. Upshur, 26 Tex. 64, and Booth v. Strippleman, 26 Tex. 436, and Maddox v. Fenner, 79 Tex. 279, 15 S. W. 237, and the various cases that have been pressed upon us for consideration. We have followed, as we understand them, the rules laid down by our courts for locating this land, as our opinion demonstrates.

The appellees urge on us not to render judgment in this case, but to remand it for another trial. Two of the reasons given us are very cogent and persuasive; the first is that this opinion in regard to the true location of the Red river is involved in the suit of the state of Texas with the state of Oklahoma, where that state is seeking to place the south bank of Red river at the foot of the high bluff, thereby swallowing and eliminating from Texas all of the surveys that lie immediately north of and adjacent to the high bluffs. That a recceivership was appointed by the Supreme Court of the United States to take charge of the territory claimed by Oklahoma in Texas, which includes the Durfee survey, the Lucinda Meadow, and all those surveys lying on the river discussed by this court.

While we doubt if we can take judicial knowledge of such a suit, yet we must respect the solemn statement made in this case by the Attorney General of the state, engaged in this and in the suit of Oklahoma against Texas, when he says he fears this opinion may embarrass the state in the other case, though as between the litigants in this case we cannot see that it does here for a very obvious reason shown by the state's contention, not necessary to state.

And the second consideration is that the state, through its able and worthy representatives, say that the entire facts involving the controversy have not been fully developed, and can be on another trial. We would not feel justified in reversing and rendering judgment in a case unless it appeared so completely developed that another trial would not change the result. Nor would we in such an imperfectly developed case render a judgment that would hazard the rights of the state and render it at some disadvantage in a controversy so important to it and her citizens as is made to appear to us by the representations of its honorable representatives.

We, therefore, withdraw our judgment in so far as it reversed, and rendered judgment for appellants, and now grant the motion for a rehearing, and reverse the judgment of the trial court and remand the cause for a new trial.

Reversed and remanded.