### McFADDIN et al. v. HEBERT et al.

#### No. 2953.

Court of Civil Appeals of Texas. Beaumont.

Nov. 4, 1936.

Rehearing Denied Dec. 23, 1936.

J. L. C. McFaddin, E. L. Nall, and Howth, Adams & Hart, all of Beaumont, for appellants.

Lipscomb & Lipscomb and H. P. Barry, all of Beaumont, for appellees.

WALKER, Chief Justice.

For the opinion of this court on a former appeal, reversing and remanding this case for a new trial with instructions to submit only issue No. 1 of the court's charge, see McFaddin v. Hebert, 32 S.W.(2d) 914; for the opinion of the Supreme Court, answering our certified questions, and upon which we based our judgment of reversal and remand, see McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213, and for the opinion of the Supreme Court on writ of error against our judgment of reversal and

remand with instructions see McFaddin v. Hebert, 44 S.W.(2d) 938.

■ For a full, clear, and satisfactory statement of the nature of this case we refer to and adopt, without bringing it forward in this opinion, the statement made by Judge Sharp in his opinion, McFaddin v. Hebert (Tex.Com.App.) 44 S.W.(2d) 938. Issue No. 1 set out in Judge Sharp's opinion reading as follows:

"Special Issue No. 1: 'Did James Ingalls, in making the survey of the E. L. Moore and other connecting surveys go to the northwest corner of the John McGaffey League, as called for in his field notes of the Moore Survey, or did he not?'

"You will answer 'Yes' or 'No' as you find the facts to be," was again submitted on this trial and again answered in the affirmative. Many other questions were also submitted to the jury, but the affirmative answer to question No. 1 is sufficient to support the judgment of the lower court awarding appellees all the land in controversy. Our reasons for this construction of issue No. 1 were given by us on the former appeal, and brought forward by Judge Sharp in his opinion cited above.

We overrule appellants' assignment that the evidence was insufficient to raise issue No. 1 and that the jury's answer was against the overwhelming weight and preponderance of the testimony. That very assignment was before us on the former appeal and was overruled. The evidence on this appeal is substantially the same as on the former appeal.

■ We sustain appellants' exception to special issue No. 1, that it " * * * in no manner advises the jury as to the burden of proof and in view of the fact that the burden of proof is upon the plaintiff to establish his cause of action, said issue as framed is prejudicial to the defendants."

In Texas Employers' Ins: Ass'n v. Lemons, 125 Tex. 373, 83 S.W.(2d) 658, 659, the Supreme Court had before it the following issue: "Do you find from the evidence that the defendant O. O. Lemons sustained accidental injuries on or about the 1st day of November, 1928? Answer this question 'Yes' or 'No.'"

Writing the opinion, Judge Critz said:

"We are of the opinion that the charge was erroneous in the particular indicated. Section 5 of article 8307, R.C.S.1925; Psi-

menos v. Huntley (Tex.Civ.App.) 47 S.W. (2d) 622. * * *

"The right of a litigant to have the jury properly instructed on the burden of proof is a valuable one. Psimenos v. Huntley, supra, and authorities there cited. In fact, this proposition of law is' too well settled to require the citation of authorities. It must follow that, unless it can be said that this charge properly indicated to the jury on whom rested the burden of proof, it was erroneous, and a reversal must result.

"A reading of the above question clearly discloses that it is so worded and constructed as to fail utterly to indicate within itself any burden of proof whatever. It simply asks the jury, 'Do you find from the evidence * * *?' It in no manner tells the jury that a 'yes' answer requires such preponderance.

"When the question is considered in the light of the above-quoted preliminary instruction on burden of proof, the error becomes the more evident. In such preliminary instruction the jury were told in substance to answer all questions 'from a preponderance of the evidence.' To our mind such instruction could mean nothing more and nothing less than that all answers must be supported by a preponderance of the evidence. Certainly a jury of laymen would be liable to so understand it. Under such instruction the jury might well understand that, in order to answer such question 'yes,' they would have to find the preponderance of the evidence that way. On the other hand, the jury might just as well understand that, in order to answer such question 'no,' they would have to find the preponderance of the evidence that way. It goes without saying that a charge so constructed was and is erroneous, because the association was entitled to have the jury clearly understand that, unless the preponderance of the evidence supported a 'yes' answer, the question should be answered 'no.'"

The Lemons Case was decided long after we handed down our opinion on the former appeal of this case and, of course, is the law on the form and manner of submitting special issues.

■ Appellants have assignments against the form of questions 2, 3, and 4, and also that they were not raised by the evidence. As these questions were evidentiary in their nature and submitted no controlling issues to the jury, these assignments become immaterial.

Appellants also complain that the court erred in refusing to submit certain defensive issues. These assignments are overruled because the issues brought forward submitted only matters of evidence.

Our fact conclusions upon the correct location of the southwest corner of the Dennis Gahagan survey and the southeast corner of the McGaffey labor and the location of the D. Burrell survey immediately west of the McGaffey labor take out of the case appellants' propositions that appellees were estopped to dispute these locations.

The trial court submitted twenty-six special issues requested by appellants, beginning each issue as follows: "Defendants' Special Issue No. ———," followed by the number of the issue. Appellants complain of this manner of submission, for the reason that the issues "informed the jury more or less accurately of the effect of their answers to said issues and their bearing upon the claims or contentions of the party requesting them; and such action on the part of the trial court is particularly erroneous when the party requesting the submission of such special issues also requests that they be submitted as a part of the court's main charge and not set apart and designated as issues requested by the party himself." This contention is overruled. It is certainly one that appellants cannot make. They prepared the questions, and if, by their form, the jury was advised of the effect of their answers, the fault was appellants'. However, the practice of making all questions submitted to the jury part of the general charge is to be commended.

Appellants present many assignments against the argument of counsel for appellees and misconduct of the jury which can be obviated upon another trial.

For the reasons stated, the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

### On Rehearing.

Both parties to this appeal have filed motions for rehearing; appellants have asked for additional fact conclusions. In our original opinion it was our purpose to refer to and adopt as the facts of this appeal all facts found by us in our opinions on the former appeal and in our certificate to the Supreme Court. However, being in doubt as to the exact nature of our findings, appellants ask that we specially find the following facts, which request is granted:

"I. A finding to the effect that the cedar stake did, in March, 1881, at the time Ingalls made the surveys in question, mark the Southeast corner of the John McGaffey Labor and the Southwest corner of the Gahagan Survey.

"II. A finding to the effect that Ingalls was familiar with said location of the Southeast corner of the McGaffey Labor and the Southwest corner of the Gahagan at the time he made the surveys in March, 1881, as the same were located on the ground by the cedar stake.

"III. A finding to the effect that the Surveyor Ingalls, at the time he ran the line South from Taylor's Bayou, on March 3, 1881, ran the same from the called western corner of T. & N. O. Surveys 121 and 122 as now located on the ground.

"IV. A finding that at the time Ingalls located the surveys in controversy, in March, 1881, that he located the Holbrook's Southeast corner at the Southwest corner of the Burrell Survey as now marked on the ground by the iron post, as called for in Ingalls' field notes of the Holbrook Survey.

"V. A finding to the effect that the present recognized location of the Reuss, Isaacs, Glenn, and McGaffey Labor, and the Burrell Surveys, was the true recognized location of said surveys at the time Ingalls made his survey in March, 1881, and were the locations called for by Ingalls in his field notes of the Byrne, Fletcher, and Holbrook Surveys and the Pedro de la Garza League and Labor.

"VI. A finding to the effect that Ingalls, in locating the Northeast corner of the Pedro de la Garza Survey, located the same on Sabine Lake, at the Northwest corner of the Gahagan Survey, as now located with reference to the cedar stake as the Southwest corner of the Gahagan.

"VII. A finding to the effect that Ingalls, in locating the Pedro de la Garza Survey, the Byrne, the Fletcher, and the Holbrook, in his calls in the field notes of the same for the Gahagan, the corners of the Reuss, the corners of the Isaacs, and the corners of the Sarah Glenn, and the corners of the McGaffey Labor and the D. Burrell Survey called for the location of these surveys in accordance with their present accepted location on the ground as located in regard to the cedar stake as the Southwest.

corner of the McGaffey Labor and the Southwest corner of the Gahagan Survey."

As we understand the record, these requested findings are established by the testimony beyond controversy; that point was made clear on the former appeal. Wherein these findings conflict with the verdict of the jury, the verdict is set aside as wholly without support in the evidence.

Appellants insist that this appeal is ruled by State v. Sullivan (Tex.Com.App.) 92 S.W.(2d) 228. The facts of the two cases are strikingly similar, and but for the jury's affirmative answer to question No. 1 there would be no distinction between the two cases. The issue submitted by question No. 1 was raised by the evidence, and by its answer the jury found that Ingalls, in making the survey of the Moore and the other connecting surveys, went to the Northwest corner of the John McGaffey league as called for in his field notes of the Moore survey. In locating the Moore the court must follow the actual footsteps of the surveyor; on this finding of the jury State v. Sullivan has no application, for, as we understand State v. Sullivan, the actual "footsteps" of the surveyor who made the survey were not found. That appellants were not entitled to an instructed verdict, that the issue submitted by question No. 1 was raised by the evidence, and that an affirmative answer to question No. 1 would support a judgment for appellees, were points decided by us against appellants on the former appeal; we said, 32 S.W.(2d) 914, 916: "But if he [Ingalls, the surveyor] knew the location of the northwest corner of the McGaffey League, and, knowing it, called for it, then appellees are entitled to recover; that is, if he went to the northwest corner of the McGaffey League, as it existed upon the ground, when he was surveying the Moore, appellees should recover. But if he called for this corner without knowing its location and did not carry the Moore to that point, that is, 'go' there, as submitted by question No. 1 reflected by our certificate, they cannot recover." (This proposition immediately follows the quotation from our opinion given below in answer to appellees' motion for rehearing, and should be read in connection therewith.)

■ Our conclusions of fact and law on the former appeal were approved by the Commission of Appeals, 44 S.W.(2d) 938, and, as the evidence on this appeal is in substance the same as on the former appeal, these conclusions constitute the law of this case.

In their motion for rehearing, appellees bring forward again the legal proposition advanced on rehearing on the former appeal, and which we overruled, saying:

"These propositions have no application to the facts of the case, as sustaining appellants' contention for an instructed verdict. Of course, it is correct to say that no calls will be rejected if all can be reconciled. But all the calls in the Gahagan cannot be reconciled. Its call for distance on its south boundary line is, as a matter of law, excessive 1,054 varas, and because the call for distance cannot be reconciled with the location on the ground of its west boundary line all of appellees' propositions, as summarized above, go out of the case.

"The issue was clearly made that Ingalls, in locating the Holbrook and Moore, thought that the south boundary line of the Gahagan was 6,923 varas long. Accepting that as the true length of that line and knowing that the north boundary line of the McGaffey League was 10,923 varas in length, he supposed that the northwest corner of the McGaffey League was only 1,976 varas from the southwest corner of the Burrell. In this he was in error. The true distance of the northwest corner of the McGaffey League from the southwest corner of the Burrell was 3,030 varas. The issue was further raised that the true location on the ground of the northwest corner of the McGaffey League was in doubt. If, in fact, Ingalls knew of the true location on the ground of this corner and located the Moore in relation thereto, he made an error of 1,054 varas in his south boundary line, for he could not have been in doubt as to the location on the ground of the southwest corner of the Gahagan, the southeast corner of the McGaffey Labor, the southwest corner of the McGaffey Labor, the southeast corner of the Burrell, nor the southwest corner of the Burrell. That is to say, he could not have been in doubt as to the location of these corners if he made any effort, upon the ground, to locate them. Their location was reflected by the facts upon the ground beyond controversy. If Ingalls did know the true location of the corners of these surveys just named, and it was his duty to know these facts, then his call for the northwest corner of the McGaffey League, in connection with the calls for the south boundary line of the Moore, was either a mistake on his part as to its true location or, if he

knew its location, he intentionally created an excess of 1,054 varas in the south line of the Moore."

Appellees also insist in effect that, by the former appeal, the form of question No. 1 became the law of the case, and that we should approve the form on this appeal; this contention is answered to our satisfaction by the original opinion.

Appellees also insist · that the form of question No. 1, whereby the burden of proof was upon appellants, has support in the following authorities: Worthington v. Baughman, 84 Tex. 480, 19 S.W. 770; Moore v. Stewart (Tex.Sup.) 7 S.W. 771; Weatherly v. Jackson, 123 Tex. 213, 71 S. W.(2d) 259; Smithers v. Lowrance, 100 Tex. 77, 93 S.W. 1064; Jordan v. Young (Tex.Civ.App.) 56 S.W. 762, 763. We quote from appellees' argument on this point: "Notwithstanding that McFaddin, et al., were the defendants in the case, they held the burden to prove that the calls in the Moore for the north line of the Russell and for the north line of the McGaffey and the calls in the Holbrook for the north line of the McGaffey, said north lines of the Russell and the McGaffey constituting the south lines of the Moore and the Holbrook, were not in fact correct, but were made through error and by mistake."

The legal point upon which this argument is made does not control the burden of proof as it relates to question No. 1. On authority of State v. Sullivan, supra, appellants met and discharged, as a matter of law, all of the burden imposed upon them by the proposition invoked in appellees' argument, when they established, as a matter of law, an excess of 1,054 varas in the south boundary lines of the Moore and the Holbrook surveys. When that fact was established—bearing in mind that appellees were plaintiffs—to take their case out of the doctrine of State v. Sullivan, they rested under the burden of establishing the fact submitted by question No. 1, that is, that James Ingalls, in making the survey of the Moore and the other connecting surveys, went to the northwest corner of the John McGaffey league as called for in the field notes of the Moore. In our judgment, the following authorities satisfactorily establish that conclusion: Williams v. Winslow, 84 Tex. 371, 19 S.W. 513; Duff v. Moore, 68 Tex. 270, 4 S.W. 530, 531; Schaeffer v. Berry, 62 Tex. 705; Braumiller v. Burke, 12 Tex. 387, 247 S.W. 501; Hill v. Collier (Tex.Civ.App.) 135 S. W. 1084 (error dismissed); Lee v. Nickelberry (Tex.Civ.App.) 255 S.W. 486; Lennox v. Isbell (Tex.Civ.App.) 245 S.W. 724; Stein v. Roberts (Tex.Civ.App.) 217 S.W. 166, 168; Scott v. Pettigrew, 72 Tex. 321, 12 S.W. 161. In Duff v. Moore, the appellants, plaintiffs below, claimed patented land and sought to extend the calls for distance in their patent 280 varas—in the case at bar appellees seek to extend the calls for distance in their patents a 1,054 varas; the Supreme Court said: "The burden was upon appellants to show that the patent ·under which they claimed embraced the land sued for." That fact they did not show and lost their appeal on the proposition, stated by Judge Gaines in writing the opinion: "In case of conflicting calls indicating two distinct lines of a survey, that actually run by the surveyor will always control, provided it can be proved." So, in this case, in order to recover the land sued for, appellees rested under the burden of showing the line "actually run by the surveyor"; that issue was submitted by question No. 1. In Stein v. Roberts this court said: "At its southwest corner, the Eigeneaur calls for the Silas Smith and calls for the south boundary line of the Eigeneaur to continue with the north boundary line of the Smith. The appellant, as plaintiff, had the burden of proving that in fact the boundaries of the Eigeneaur survey included the land he claimed, and, to extend the west line of said survey further south than 1,248 varas, he was compelled to trace the footsteps of the surveyor down to that point. The rule is well settled that call for course and distance prevails over a call for the line of a senior survey if that line itself is indefinite and uncertain."

In Braumiller v. Burke the court said: "The real controversy is brought about by the effort on the part of appellee to extend his own lines beyond their calls for course and distance, his being a junior survey, and intersect an unmarked line, thus bringing about a conflict with the senior survey as it is claimed by appellants to be located. This being true, the appellee, as plaintiff in the court below, had the burden of proving that the boundaries of his patent in fact included the land in controversy, and in order to extend his south line beyond its call for distance to the unmarked line of the adjoining survey it was incumbent on him to trace the footsteps of the surveyor to that point."

For the reasons stated, appellees' motion for rehearing is in all things overruled.

COMBS, Justice (dissenting).

The writer agrees with the majority holding that the burden of proof was upon the plaintiffs with respect to the issue discussed in the opinion of Chief Justice WALKER.

However, on rehearing, this writer has reached the conclusion, from further study of the record, that the holding of our Supreme Court in State v. Sullivan, 92 S.W. (2d) 228, governs this case, and that as a matter of law appellees are restricted to their field note calls for course and distance, and that therefore judgment should be here rendered for appellants.