JAMES L. SCOTT v. T. L. PETTIGREW ET AL.

No. 5946.

1. **Charge—Fixed Corners—Survey.**—In a survey the southeast and southwest corners are not disputed. The east line is marked for much of its distance and a double hackberry on that line is claimed for the northeast corner. No marked line can be found on the west, though there is testimony that it was run. The north line is in dispute and it is called at right angles with the east line. The court charged that if the jury found that the two hackberries were marked and established as the northeast corner and that the west line was not run and measured, then the north line and the length of the west line would be controlled and fixed by said hackberries or northeast corner. *Held,* such charge was error, in that it limited the effect of the fact, if found, of the locality of the northeast corner. That corner would control the north line whether the west line was in fact never run, or if run its locality lost.

2. **Excess in Survey—Charge.**—While mere excess will not affect a survey nor in any way control the lines if found, still when only parts of the survey are identified and there is confusion in the testimony as to other parts, it is error to charge that such excess in area must only be considered as a circumstance and to aid in following the footsteps of the surveyor.

3. **Charge.**—All corners of surveys which are found are of equal importance. It was error to charge that if neither the northeast nor northwest corner could be found that the survey should be constructed from the beginning corner (the southwest), and that

the northeast corner be ascertained by running the first and second lines as called—the latter to be prolonged to its intersection of the east line run from the southeast corner. It is well settled that the beginning corner of a survey is of no greater weight or importance in determining its boundaries than any other corners which may be established by the testimony.

4. **Burden of Proof—Lines of Grant.**—Where the litigation was as to the locality of a line of a survey and defendants insisted that the lines of the grant sued upon did not include the land claimed by defendants, it was error to charge the jury that it devolved upon the defendants to prove that the lines of plaintiff's grant did not include the land in controversy. The burden is upon the plaintiff and never changes.

5. **Reasonable Certainty.**—It is not proper to give *reasonable certainty* as the rule of sufficiency of proof in civil cases. Such rule is equivalent to certainty beyond reasonable doubt.

APPEAL from Bell. Tried below before Hon. W. A. Blackburn.

This is an appeal from a judgment in favor of appellees, holding the title to the Maximo Morena eleven league grant and establishing the north boundary of the grant upon the claim that the west line be extended to its full length as called for in the grant. There was also testimony tending to show marked lines of the grant beyond or north of the *double hackberry* corner, which for many years was regarded the true northeast corner of the survey. The Morena survey has been the subject of litigation for many years. It is discussed in Phillips v. Ayers, 45 Texas, 601; Ayers v. Harris, 64 Texas, 296; and Ayers v. Lancaster, Ib., 305. In the last two cases will be found a statement of the facts discussed where not stated in the opinion.

*A. J. Harris,* for appellant, cited Phillips v. Ayers, 45 Texas, 601; Willis v. Lewis, 28 Texas, 191; Zapp v. Michaelis, 58 Texas, 274; Jones v. Andrews, 62 Texas, 656; Davis v. Smith, 61 Texas, 18; Ayers v. Harris, 64 Texas, 296; Tyler on Boundaries, 29, 30, 129, 131, 282, and 298; Booth v. Upshur, 26 Texas, 64, for mistakes in call; Stafford v. King, 30 Texas, 257; I. & G. N. Ry. Co. v. Underwood, 64 Texas, 468; I. & G. N. Ry. Co. v. Phillips, 63 Texas, 594; G. H. & S. A. Ry. Co. v. Dunlavy, 56 Texas, 258; Hubert v. Bartlett, 9 Texas, 97; Urquhart v. Burleson, 6 Texas, 511; Robinson v. Doss, 53 Texas, 508; Markham v. Carothers, 47 Texas, 22; Smith v. Montes, 11 Texas, 24; Austin v. Talk, 20 Texas, 164, and 26 Texas, 130; Andrews v. Smithwick, 20 Texas, 111.

*C. L. Cleaveland,* for appellees.—Where the quantity of a tract of land is given, as well as the metes and bounds given, the metes and bounds will control the location although the metes and bounds contain more or less than the quantity called for. Barclay et al. v. Howell's Lessee, 6 Peters, 498.

Where the boundaries of land are fixed by unquestionable monuments, although neither courses nor distances nor the quantities of land correspond, the monuments must govern. Perman v. Mead, 6 Mass., 131.

These monuments are either natural objects, as rivers, streams, springs, or marked trees.   Rix v. Johnson, 5 N. H., 524.

It is no objection to the location of a grant that the quantity of land is greater than called for or that the lines are prolonged greatly beyond the distance.   Tyler on Boundaries, 338.

In locating lands marks made by the surveyor as well as ascertained natural or artificial boundaries are to prevail over course and distance. And it was so held, although the boundaries included 136,000 acres instead of 14,900, the number called for by the deed.   Sturgeon v. Floyd, 3 Rich., 80.

In the absence of calls either for monuments or course and distance, then calls for quantity may be resorted to.   Welder v. Hunt, 34 Texas, 44; Ayers v. Watson, 113 U. S., 594.

The lines actually traced on the ground as shown by the landmarks constitute the true boundary; and where the marked lines correspond to the course called for in the grant, and require only prolongation to harmonize every other material call, this will be done.   The charge of the court ignored the just influences of the evidence of the original surveyor and his chainman as to the manner of making the survey from the southwest or beginning corner, the admitted course and position of the west line, the admitted course and position of the east line up to the so called "hackberry corner," as well as the facts in evidence tending to show if not conclusively showing the existence and extension on the proper course of the old blazed line above and beyond the so called "hackberry corner" to its point of intersection with the old blazed extreme north line as found by Turner, corresponding in course to the calls of the field notes of the Morena grant, and extending from the northwest corner of the Morena survey as the course and distance measured from the (southwest) beginning corner would fix it, disregarding the trifling distance of 60 to 100 varas in measuring a line of 22,960 varas length. The front of the survey being known and its side lines being admitted or ascertained, assuming as hypothesis that the back line as traced by Turner was the true north line as marked by the original surveyor, the survey would be properly closed by connecting these lines, prolonging them on their courses to points of intersection, and thus harmonize all the material calls in the grant.   Ayres v. Watson, 113 U. S., 594; Ayres v. Lancaster, 64 Texas, 305; Ayres v. Harris, 64 Texas, 296.

The reason for running to the calls for objects over course and distance is not only because of greater certainty, but it is more beneficial to the grantee.   Tyler on Boundaries, p. 202.

The marks on the ground indicating the lines originally run of an old survey are the best evidence of the true location.   Id., p. 202.

Rules in locating grants are:

1.   The lines originally run.

2.   Lines run from acknowledged calls or corners.

3.   Lines run according to course and distance.   Id., p. 282.

Where a marked line can be found it shall be pursued as far as may be done in its whole extent; but if it does not extend to the point of intersection, then it must be continued until the intersection is made, taking the course called or required by the deed.   George v. Thomas, 16 Texas, 89.

The identification of the actual survey is the purpose of the rules of evidence.   The footsteps of the surveyors must be followed.   Stafford v. King, 30 Texas, 257.

A departure from calls which will make the survey repugnant to the known calls shall not be made.   Anderson v. Stamps, 19 Texas, 465.

Established corners and lines of the survey actually traced upon the ground must control an object which is uncertain and unknown.   Hubert v. Bartlett, 9 Texas, 97; George v. Thomas, 16 Texas, 74; Bass v. Mitchell, 22 Texas, 285.

The surveyor who ran the line or his chainmen are the best witnesses to establish the true line as run.   Tyler on Boundaries, 285–303.

What are boundaries are matters of law; where they are are questions of fact.   Bolton v. Lann, 16 Texas, 96; Doe v. Paine, 4 Hawks, 64; Cockrell v. Turner, 4 Monr., 63; Hurley v. Morgan, 1 Dev. & Bat., 425.

As to the prolongation of lines or shortening them, and how, as effected by course and distance.   Tyler on Boundaries, 201.

If the object can be reached by course, disregarding distance, it will be so done.   Tyler on Boundaries, 201–7.

Lines must be run to the known boundaries instead of terminating by distance, and the marked line would control both course and distance. Id., 208.

The lines actually traced on the ground as shown by the landmarks, and not those of course and distance (to the exclusion of the marked line), constitute the boundary; especially is this true where the marked lines (where marked) are on the right course and require only prolongation to harmonize every other material call, disregarding distance.   Bolton v. Lane, 16 Texas, 112.

Where there are no monuments the land must be bounded by the courses and distances named in the patent.   McIver v. Walter, 4 Wheat., 444.

On a question of boundary the course of the last line is to be extended according to the magnetic meridian at the date of the deed and not the true meridian.   Young v. Leeper, 4 Bibb, 503.

The rectangular figure will be preserved in preference to any other in fixing locations.   Massie v. Watts, 6 Cranch, 148.

A posterior line will never be reversed for the purpose of showing the termination of a prior one, unless the description of the posterior be more

specific than that of the prior, and unless from the posterior a mistake in the prior can be clearly shown. Harry v. Graham, 1 Dev. & Bat., 76.

If it appears that a subsequent line was actually run and marked, a prior line may be extended to it in order to ascertain the true corner. King v. King, 4 Dev. & Bat., 164.

A survey must be closed in some way or other. If this can be done by following the course the proper distance, then it would seem that distance should prevail; but when the distance falls short of closing, and the course will do it, the reason for observing distance fails. Doe v. King, 3 How. (Miss.), 125.

Where, in describing a boundary line, another known line is called for, and the distance gives out before reaching the line called for, the distance is to be disregarded. Gilchrist v. McLaughlin, 7 Iredell, 310.

The great principle which runs through all the rules of location is that where you can not give effect to every part of the description that which is more fixed and certain shall prevail over that which is less so. Johnson v. McMillan, 1 Strobart, 143.

The footsteps of the surveyor must be followed. Stafford v. King, 30 Texas, 273.

It is a matter of law which juries can not control, but which must control them, that where lines of a survey have been run and can be found they constitute the true boundaries, which must not be departed from or made to yield to course and distance or to any less certain and definite matter of description. George v. Thomas, 16 Texes, 85; Bolton v. Lann, 16 Texas, 96.

Established corners and lines of the survey actually traced upon the ground must control. Bass v. Michell, 22 Texas, 535.

A call for a marked tree will control course and distance. Hubert v. Bartlett, 9 Texas, 97; Urquhart v. Burleson, 6 Texas, 511.

If there be a defined beginning point the boundaries may be established by course and distance alone. Stafford v. King, 30 Texas, 257.

The courses should be first pursued, contracting or extending the distances as the case may require, to make the survey close. Booth v. Strippleman, 26 Texas, 436.

The location of a corner is a mixed question of law and fact. Castleman v. Pouton, 51 Texas, 84.

A call for a corner which is ascertained by marked lines intersecting at the corner will prevail over a call for quantity and distance. Buford v. Gray, 51 Texas, 331.

The courses should be first pursued, as the case may require, to make the survey close. Booth v. Strippleman, 26 Texas, 436.

Established corners and lines of the survey actually traced upon the ground must control. Bass v. Mitchell, 22 Texas, 535.

Acker, Presiding Judge.—Appellant brought this suit in the usual form of trespass to try title to 320 acres of land claimed as a part of the J. M. Harvey survey. It was admitted that appellant owned the land described in his petition, and that appellees had a complete chain of title under the Maximo Morena eleven league grant. The Harvey survey was located north of and adjoining the Morena survey, and the real question involved is one of boundary between the two surveys. The Morena grant was located and surveyed in 1833, and the Harvey at a later date, but when does not appear. If the north boundary line of the Morena is located where appellant contends that it is, then the land sued for is a part of the Harvey, otherwise it is part of the Morena grant.

The north boundary line of the Morena survey has given rise to much contention. The question of its location has been involved ·in several suits heretofore before this court, and in one suit before the Supreme Court of the United States.

The field notes of the Morena survey, as given in the grant, are as follows: Situated on the left margin of the river San Andres below the point where the creek called "Lampasas" enters said river on its opposite margin, and it has the lines, limits, boundaries, and landmarks following, to-wit: Beginning the survey at a pecan (nogal), fronting the mouth of the aforesaid creek, which pecan serves as a landmark for the first corner, and from which 14 varas to the north 59 degrees west there is a hackberry 24 inches in diameter, and 15 varas to the south 34 degrees west there is an elm 12 inches in diameter. A line was run to the north 22 degrees east 22,960 varas and planted a stake in the prairie for the second corner. Thence another line was run to the south 70 degrees east, at 8000 varas crossed a branch of the creek called Cow Creek, at 10,600 varas crossed the principal branch of said creek, and at 12,580 varas two small hackberries serve as landmark for the third corner. Thence another line was run to the south 20 degrees west, and at 3520 varas crossed the said Cow Creek, and at 26,400 varas to a tree (palo) on the aforesaid margin of the river San Andres, which tree is called in English box elder, from which 7 varas to the south 28 degrees west there is a cottonwood with two trunks, and 16 varas to the south 11 degrees east there is an elm 15 inches in diameter. Thence follow the river by its meanders to the beginning point and comprising a plane area of eleven leagues of land or 275 millions of square varas."

It is certain that it was the intention of both the grantor and grantee that the Morena survey should contain "a plane area of eleven leagues or 275 millions of square varas." No other surveys are called for in the field notes, and the early date at which the location was made renders it quite probable that there were no older surveys contiguous to the territory embraced in the Morena grant. The pecan (nogal) fronting the mouth of the Lampasas Creek was found, with bearings corresponding to those·

described in the field notes, except that they were located in opposite directions from the calls in the field notes.

Beginning the survey at this point and following course and distance for the northwest corner as called for in the field notes, the line runs much of the way through heavy timber, but no marks are found indicating that the first or west line was actually surveyed when the location was made. This line would cross and recross the San Andres or Leon River, a stream of such dimensions as surveyors were forbidden by law to cross or include in locating surveys. At the point where the distance called for would fix the second or northwest corner, which is located by the field notes at "a stake in the prairie," there is timber sufficiently near to have served as bearings for the identification of this corner, but no bearings are called for. The southeast or lower river corner is certainly identified and found upon the ground. Beginning at this corner, reversing the calls, and running course and distance to the northeast corner, Cow Creek is crossed at approximately the distance called for in the field notes, and at or near the point where the distance given as the length of the east line is exhausted two hackberries corresponding with those called for in the field notes were found and identified in 1855 by witnesses who testified at the trial.

It satisfactorily appears that the east line is identified by marks on timber most of the distance between the marked and identified southeast corner and the point where the hackberries were found and identified in 1855. Running on reversed calls, following course and distance from the point where the hackberries were found, and treating that point as the northeast corner, the distance given as the length of the north line gives out several hundred varas short of the point of intersection with the west line run on course and distance given in the first call of the field notes; and the north line run from the point where the hackberries were found on the reversed course called for in the field notes would intersect the west line run on course and distance from the point "fronting the mouth of the Lampasas Creek" at a point 3500 or 4000 varas south of the point where the northwest corner would be, following course and distance from the beginning corner as called for in the field notes. Running the north line south seventy degrees east from the point where course and distance from the beginning corner locate the northwest corner, the grant contains an excess of several leagues. Running the north line on reversed calls, course followed from the point where the hackberries were found and identified in 1855 to the point of intersection with the west line run on course called for from the beginning corner, the grant still contains considerable excess. Under this state of facts the court gave the following charge, which is assigned as error:

"If from the evidence you believe the first or western line was not run and measured, and that the eastern line was run no further than the two

hackberries, and that they were marked and established as the northeast corner, then the position of the north line and the length of the first line running from the beginning corner would be controlled and fixed by said hackberries or northeast corner."

The fair and reasonable if not necessary construction to be placed upon this charge makes the weight and importance of the established and identified northeast corner, in locating the north and west lines, dependent upon the jury's belief that the first or west line was not run and measured.   We think if the hackberries were identified as the northeast corner, and there were no marks found upon the ground indicating where the western line was located by the surveyor who made the original survey, this corner would be entitled to the same weight and effect in determining the position of the north line and the length of the west line running from the beginning corner as if the jury believed that the first or western line was not run and measured when the location was made.

The southwest and southeast corners upon the river appear to have been satisfactorily identified, and if the jury believed that the place where the two hackberries were found was the true northeast corner, and they could not find from the evidence the locality of the north and west lines as run by the original surevyor, being satisfied from the evidence of the localities of these three corners, the court should have instructed them to locate the north and west lines and construct the survey by following course from the beginning or southwest corner and following course on the reversed call from the northeast corner to the point of intersection of the two lines so run, without regard to whether or not the first or western line was run and measured at the time the original survey was made.

The court gave the following charge:   " If from the proof before you and under the instructions herein given you, you can fix the lines of the survey in harmony with its calls and the known corners, the fact, if you find it to be a fact, that said lines would include more than eleven leagues becomes wholly immaterial, and you will in such case not consider the extent of the area further than as a circumstance to aid you, in connection with all the evidence in the case, in following the footsteps of the original surveyor and fixing the true boundaries of said grant."

This charge is complained of as error.   If the grant was for land located between older surveys having marked and identified boundaries, and these older surveys were called for in the field notes of the grant, and the "footsteps" of the surveyor who located the grant could not be found upon the ground, then excess in area would be of no consequence, because the intent to grant the land between the marked boundaries of the older surveys would be clear.   Bingham v. McDowell, 69 Texas, 100.   But where no older surveys are called for in the grant, and there is nothing indicating an intent to embrace in the grant land not included in the area named, and the footsteps of the surveyor who made the location are found upon

a part only of the boundaries of the grant, we think the jury should not be instructed to fix the unmarked and undefined boundaries regardless of the fact of excess. The fact of excess in area should have been left to the jury to be considered in connection with all other evidence, without suggestion from the court as to what weight it was entitled to in determining so much of the boundaries as were not identified by marks and objects upon the ground.

It is contended that the court erred in the following charge: "If the testimony does not satisfy you that the two hackberries called for in the grant are identified as the northeast corner of the survey, and if you can not from the testimony fix said northeast corner nor the back line of said Morena survey by any other marks or monuments, then if you find the beginning corner is established and identified, then you will fix the said northeast corner by the courses and distances of the first and second lines called for in the Morena survey, except that the second line should be extended so as to meet the east line, if you find it was marked and extended beyond the hackberries, and the second line thus run will be the true north line of the Morena grant."

It is well settled that the beginning corner of a survey is of no greater weight or importance in determining its boundaries than any other corner, if other corners are as well established and identified as the beginning corner. There seems to be no doubt as to the localities of the two corners on the river, the southeast and the southwest; both appear to have been well identified upon the ground. This being so, one was entitled to as much weight as the other in determining the locality of the north or back line, unless the jury should believe from the evidence that the line from one of these corners was actually run and measured, and not from the other. In that event the corner from which the line was run would be of greater importance, because of the certainty of the locality of the line so run. If the jury could not determine from the evidence the locality of either the northwest or the northeast corner, and they could not from the testimony fix the north or back line by any other marks or monuments, then they should have been permitted by the charge to locate the north or back line from either or both of the two identified corners on the river, under the guidance of all the evidence and connecting circumstances, including the question of area.

The fourth subdivision of the charge given is as follows: "The burden of fixing this north line is on the defendants, and unless they have so established said line so as to include or cover the plaintiff's land with reasonable certainty and by a preponderance of credible evidence, you must find for the plaintiff." In view of another trial we think it proper to say that this charge was error for which we would have reversed the judgment had it been in favor of appellant. The burden of proof was upon the appellant, plaintiff below, throughout. Clark v. Hills, 67

Texas, 148, *et seq.* We think too that the words "reasonable certainty" mean substantially the same as "beyond a reasonable doubt." We do not understand the law to require that a jury in a civil case must believe beyond a reasonable doubt to authorize their verdict, but we understand the rule to be that the verdict should be in accordance with the preponderance of the evidence.

For the errors indicated we think the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted December 18, 1888.