### MAXCY v. BOYLES et al.

### No. 9528.

Court of Civil Appeals of Texas. Galveston.
April 21, 1931.

Rehearing Denied April 30, 1931.

L. B. Moody, of Houston, for appellant.

Wm. K. Hall, S. H. German, G. G. Gannon, and Baker, Botts, Andrews & Wharton, all of Houston, for appellees Texas Co. and others.

Hunt & Hunt, C. A. Teagle, and W. S. Hunt, all of Houston, for appellees Boyles and others.

LANE, J.

John W. Maxcy brought this suit against J. Stuart Boyles, as county surveyor of Harris county to compel him, as such surveyor, to make and send to the general land office field notes of a tract of land in Harris county which Maxcy claimed to be a vacancy lying between the east line of the Reels & Trobaugh league and the west line of the Edward Shipman survey, which he claimed to be land belonging to the public free school fund which he had the right to purchase.

In his petition Maxcy alleged that no part of the land is included within the boundaries of the Reels & Trobaugh, or any other survey, but that it is erroneously claimed by various persons who own parts of the Edward Shipman survey that said land is a part of the Edward Shipman survey.

The plaintiff alleged "that he had made application to the Commissioner of the General Land Office to have surveyed and to purchase the above described land, and that said Commissioner had replied that there was not sufficient information on file in his office to advise plaintiff that a vacancy might exist, and therefore he advised 'no vacancy'; that said Commissioner declined to recognize the existence of the area as School Land and refused to authorize a survey to be made because he did not have sufficient information on file in his office to advise plaintiff that a vacancy existed, and because the map of Harris County, Texas, then in use in the General Land Office showed the Edward Shipman survey to be contiguous on the west to the Reels & Trobaugh survey."

He alleged that no impediment, in fact, existed to the making of the survey requested by him, nor to the sale of said land to him.

The plaintiff describes the land which he sought to have surveyed as follows:

"Beginning at the intersection of Green's Bayou with the East line of the Reels & Trobaugh League and running thence North along said East line Twenty-two Hundred Forty-seven (2247) varas to the Northeast corner of said League in the South line of the J. W. Moody survey;

"Thence East along said South line of said Moody Survey Five Hundred Twenty-nine and Three-tenths (529.3) varas to the West line of the Edward Shipman Survey (which point is distant 1700 varas West from the East line of said Shipman Survey);

"Thence South along the West line of said Shipman Survey 2175 varas, to Green's Bayou; and

"Thence up Green's Bayou with its meanders to the place of beginning, containing 213.9 acres of land."

At the request of Boyles, C. A. Teagle, S. S. Hunt, Harrisburg Lumber Company, and two other parties were made parties defendant.

The Harrisburg Lumber Company disclaimed, and all other defendants answered by general demurrers, general denials, pleas of not guilty, and specially alleging the ownership of certain described lands, parts of the Edward Shipman survey.

The case was tried before the court without a jury, and judgment was rendered against plaintiff, Maxcy, who has appealed.

Upon request therefor, the court prepared and filed his findings of fact, the pertinent parts of which are substantially as follows: That the Reels & Trobaugh league was surveyed and located on the ground by Surveyor S. C. Hiroms in May, 1827; that in the year 1824 the Mexican government granted to Thomas Earle a labor of land, described in the grant as being situated on the western bank of Green's Bayou, the southeast corner of which is described only as being on the west bank of the bayou; that on or prior to December, 1830, Surveyor Hiroms, who surveyed and located the Reels & Trobaugh league in 1827, surveyed and located the Edward Shipman survey; that there are no original English field notes of the Shipman survey now in existence, and that the field notes contained in the descriptive matter of the Mexican grant to Shipman describe the Shipman survey as beginning at a landmark on the margin of Green's bayou opposite the southeast corner of the Earle survey, 5 varas distant from a water oak marked "E S"; thence to run east 481 varas; thence north 4,380 varas for its northeast corner; thence west 1,700 varas for its northwest corner, from which a pine bears south 45 degrees, 10 varas, distant; thence south 2,700 varas to the margin of Green's bayou, from which a water oak 24" in diameter bears east 7 varas distant; thence down the bayou to place of beginning; that the south line of a survey made for J. W. Moody and the north line of the Shipman is one and the same.

He found that the west line of the Shipman survey was originally located on the ground by surveyor Hiroms, and that such line is coincident with, and is the same line as, that part of the Reels & Trobaugh east line lying north of Green's bayou; that, prior

to the controversy involved in the present suit, the west line of the Shipman had always been recognized and generally reputed to be located on the ground and as being the same as the east line of the Reels & Trobaugh; that the southwest corner and west line of the Shipman survey are on the ground at the places where District Surveyor George Bringhurst placed them in his survey of a 150-acre tract, a part of the Shipman survey, situated in the southwest corner of said survey made in 1845; that Surveyor Bringhurst in his survey of said 150 acres in 1845 called for a pin oak marked "ES" at the southwest corner of the Shipman on the east line of the Reels & Trobaugh survey; that the southeast corner of the Earle survey cannot be located upon the ground by any of the monuments and objects called for in the field notes, and can be located only by recognition and common reputation; that none of the artificial monuments and objects called for in the field notes of the Earle survey or the Shipman survey are now in existence; that, if calls for course and distance in the field notes of the Shipman grant are followed, its southwest corner can be fitted on the margin of Green's bayou with approximate accuracy in at least two separate, distinct, and different points, both of which are east from the east line of the Reels & Trobaugh survey; that, if one of these points is adopted as said southwest corner, it would place the west line of the Shipman 5,393 varas east of the east line of the Reels & Trobaugh, and, running north from such point 2,700 varas, the distance called for in the Shipman field notes, would place its northwest corner 660 varas into the J. W. Moody survey, and that such line would conflict with the lines of the Anderson, Erwin, and Hiroms surveys as they are recognized on the ground to the extent of 296 varas east and west.

The court further finds, substantially:

"That in the year 1870 the surveyor, J. J. Gillespie, looked for a marked line as the west line of the Shipman survey at a point 1700 varas west from the recognized northeast corner of said Shipman survey and found none; that there is no evidence in this case of any marked line indicating a property line for the west line of the Edward Shipman survey at any point east of the east line of the Reels & Trobaugh survey. * * *

"That every surveyor, with the exception of the plaintiff in this case, who has surveyed land in and in the vicinity of the Edward Shipman survey and whose work is reflected by the evidence in this case, has located and recognized the location of the west line of the Shipman survey as claimed by defendants in this case;

"That the maps and record of the General Land Office introduced in evidence in this cause all show the east line of the Reels & Trobaugh and west line of the Edward Shipman survey to be coincident;

"That the Commissioner of the General Land Office has refused to recognize that any vacancy exists between the east line of the Reels & Trobaugh survey and the west line of the Edward Shipman survey."

That the land claimed by appellant to be a vacancy between the Reels & Trobaugh and the Shipman surveys, described in the plaintiff's petition is not vacant, unappropriated public domain of the state, and is not unsurveyed public school land, but as a fact it lies wholly within the boundaries of the Edward Shipman survey as they were originally located by surveyor Hiroms on or before December 14, 1830.

Appellant, while admitting that, if the east boundary line of the Reels & Trobaugh survey and the west line of the Shipman is a common one, the vacancy claimed by him did not exist, he insists that, as a fact, the west boundary line of the Shipman survey is located 200.8 varas east of the east line of the Reels & Trobaugh; that, while no objects called for in the original field notes of the Thomas Earle survey as being on the west bank of Green's bayou, marking the southeast corner of said survey, can now be found, the point on the bayou where they were located was definitely shown by general reputation, and that, since the original or locative field notes of the Shipman survey call for its beginning point to be on the bank of said bayou opposite the southwest corner of the Earle, to run thence east 481 varas, thence north 4,380 varas, thence west 1,700 varas, thence south 2,700 varas to the margin of the creek, thence following the creek down to the place of beginning, the field notes of the Shipman are unambiguous, and cannot be varied by testimony of general reputation as to where its west line is situated, notwithstanding the objects called for as marking its corners or lines cannot now be found; that, following the field note calls, the north line of the Shipman, beginning at the northeast corner thereof, running west only 1,700 varas, would not reach the east line of the Reels & Trobaugh by 200.8 varas, hence it is conclusively shown that the vacancy between the Reels & Trobaugh and the Shipman claimed by appellant actually exists, and therefore the court erred in not instructing a verdict in his favor upon his request therefor.

We cannot agree with appellant's contention that the location on the ground of the southeast corner of the Thomas Earle survey had been proven by the undisputed evidence. There was evidence of general repute sufficient to support a finding that such corner was located on the ground where appellant claims it to be. The evidence so locating it was wholly of general repute. There were, however, certain facts shown when the evi-

dence as a whole is considered to throw doubt as to where such corner is in fact located on the ground. Wherefore it cannot be held that the evidence conclusively shows the location on the ground of the lower southwest corner of the Edward Shipman survey, which is located by the original field notes at a point opposite the southeast corner of the Earle. But, if it should be conceded that the lower southwest corner of the Shipman was conclusively shown, it still appears that the field notes of the same are ambiguous and inconsistent when applied to the ground. If the east line is run north 4,380 varas from the point now claimed to be the southeast corner by appellant, thence a line is run west 1,700 varas the length of the north line, as called for by the field notes, and thence south 2,700 varas to Green's bayou, the length of the west line called for by the field notes would reach a point several hundred varas south of the bayou, and the same distance into the Gordon survey, lying to the south of the bayou. It thus being shown that the calls for course and distance called for in the original or locative field notes when applied to the ground are inconsistent and ambiguous, other evidence tending to show the true lines, such as general reputation, general recognition, may be resorted to to establish where such lines are in fact located on the ground.

Appellant testified that there was but one way to locate the southeast corner of the Earle survey by which he seeks to show the location of the lower southwest corner of the Shipman survey, and that is by general reputation. The court found from the undisputed evidence that the Earle survey and its southeast corner cannot be located on the ground by the objects and monuments called for in its locative field notes, and can be located only by recognition and common reputation, and the court also found upon ample and sufficient evidence that the west line of the Edward Shipman survey was originally located on the ground by the original surveyor, S. C. Hiroms, on or prior to December 14, 1830, and is coincident with and was and is the same line as that part of the Reels & Trobaugh east line lying north of Green's bayou; that the west line of the Edward Shipman survey, as originally run and located on the ground by the original surveyor, begins at the original upper southwest corner of said Edward Shipman survey on the north margin of Green's bayou in the east line of the Reels & Trobaugh league opposite to a small drain on the west bank; that the west line of said Edward Shipman survey, as originally run and located on the ground by the original surveyor, runs thence north with the east line of the Reels & Trobaugh, passing the northeast corner of the Reels & Trobaugh at a point 45.7 varas south of the northwest corner of said Shipman survey as originally located by the original surveyor; that the up-

per southwest corner and west line of the Edward Shipman survey are located on the ground at the place where the district surveyor, George H. Bringhurst, called for a pin oak 18 inches in diameter marked "ES" on the west side, and declared that the southwest corner and west line of said Shipman survey were located in his field notes of the 150-acre tract surveyed by him out of the southwest corner of the said Shipman survey in September, 1845.

These findings of the court are supported by direct and admissible record, proof which has constituted a part of our public records since 1845, and by overwhelming evidence that the east line of the Reels & Trobaugh survey and the west line of the Shipman survey has been for a hundred years generally recognized as one and the same. Since in this case the location on the ground of the lower and upper southwest corners and the west line of the Shipman survey are all now shown by general recognition and repute only, unless it may be said that the Bringhurst map made of his survey in 1843, accompanied by his certificate, furnishes better evidence, there can be no degree of recognition and general reputation indulged in determining the location of the points at issue. The rule stated applies with reference to corners of a survey. A beginning corner has no greater sanctity and dignity than any other corner when both are equally well identified. Scott v. Pettigrew, 72 Tex. 321, 12 S. W. 161.

Such being true, there is no rule known in law or equity which would require the court in the present case to give more dignity to the so-called beginning corner than to another corner equally as well identified, if not much better so.

The Reels & Trobaugh survey was surveyed and located by Surveyor Samuel C. Hiroms in 1827.

It is shown that, when Edward Shipman first registered in 1825, for the purpose of becoming a colonist in Austin's enterprise, he indicated the location of the land he had selected, and its location was indicated in the following words: "East margin of Green's Bayou adjoining the land of Reels & Trobaugh."

It is shown that, in about three years after Surveyor Hiroms had surveyed and located the Reels & Trobaugh survey, he surveyed and located the Shipman survey; that at the time these surveys were made the locating surveyor was confronted with the following instructions:

"Art. 6. He shall take care that no vacant lands be left between possessions, and in order that the lines may be clearly designated, he shall compel the colonists, within the term of one year, to mark their lines and to establish fixed and permanent corners.

"Art. 7. He shall appoint, under his own responsibility, the surveyor, who must survey the land scientifically, requiring him previously to take an oath truly and faithfully to discharge the duties of his office."

By decree No. 128, Sayles' Early Laws of Texas, volume 1, pp. 78, 79, § 8, it is said: "Should any commissioner or surveyor be guilty of abuse of office, he shall obtain no office of provision of the government, and furthermore shall be subject to the penalties imposed by the law of the 24th of March, 1813, on judges who proceed contrary to law."

The policy of the laws in force when these surveys were made was to leave no vacancies. The colonization law provided: "In order that there may be no vacancies between tracts, of which great care shall be taken in the distribution of lands; it shall be laid off in squares, or other forms although irregular; if the local situation requires it; and in said distribution, as well as the assignation of lands for new towns, previous notice shall be given to the adjoining proprietors, if any, in order to prevent dissentions and law suits."

There can be no question, we think, but that Hiroms, who located the east line of the Reels & Trobaugh, knew when he surveyed the Shipman three years later where such east line was located.

Having reached the conclusion that the evidence was amply sufficient to support both the findings of fact of the court and his conclusions of law, and the judgment rendered upon such findings and conclusions, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.