HUMBLE OIL & REFINING COMPANY ET AL V. E. A. ELLISON ET AL.

No. 7292. Decided November 1, 1939.
Rehearing overruled November 29, 1939.
(132 S. W., 2d Series, 395.)

*Brachfield & Wolfe, Hill & Bath* and *Frank C. Bolton,* all of Henderson, *Lasseter, Simpson & Spruiell,* of Tyler, *Bradley & Bradley,* of Groesbeck, *I. M. Williams,* of Dallas, *Fouts, Amerman & Moore* and *Robt. H. Higgins,* all of Houston, and *F. C. L. Greer,* of Waco, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that, under the evidence presented by plaintiffs upon the boundary issue the field notes should be so construed as to place, as a matter of law, the north line of the tract 154.8 feet south of the north fence line in accordance with their theory, in that the evidence showed without dispute that the call for distance on the east boundary was shown to be the result of a mistake; and, disregarding the erroneous call for distance and giving effect to other field notes, the construction of the tract would conform to the intention of the parties to the grant, as evidenced by other calls in the field notes, the configuration of the tract, the quantity called for, the declarations of the parties verbally and of record and with the north line as fenced and recognized and acquiesced in as the boundary for forty years preceding the trial. State v. Sullivan, 92 S. W. (2d) 228; Phillips v. Ayres, 45 Texas 601; Woods v. Robinson, 58 Texas 655.

*W. H. Sanford,* of Longview, and *Clower & Sewell,* of Tyler, for defendants in error.

The plaintiffs having offered testimony to prove that the land involved in this suit had been under fence of plaintiffs and those under whom they claim for more than ten years, and such land lying without the field notes of the deeds under which defendants claim title, and which testimony, if not conclusive, would certainly raise an issue of fact to be determined by the jury, and the court erred in instructing the jury to return a verdict for defendants. Cullers v. Platt, 16 S. W. 1003; Liles v. Thompson, 85 S. W. (2d) 784; Stark v. Brown, 210 S. W. 811.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Defendants in error Ellison, Wooley and Mrs. Wilson, joined by her husband, sued plaintiffs in error Humble Oil & Refining Company and others for the title and possession of a tract of land containing 8.1 acres in the Thomas J. Martin survey in Rusk County, specially pleading that they had acquired title by adverse possession of more than ten years. After defendants in error had introduced their evidence and rested the trial court instructed the jury to return a verdict in favor of plaintiffs in error and render judgment accordingly. The Court of Civil Appeals reversed the trial court's judgment and remanded the case. 106 S. W. (2d) 1083.

Questions of ratification and estoppel are raised, but they need not be determined. We have reached the conclusion after careful consideration of the evidence, that it clearly appears therefrom that the land in controversy is within, and not outside of, the boundaries of a tract of land conveyed by Mrs. L. E. Overton to J. Wooley, and consequently within the boundaries of the north part of said tract which was thereafter leased by J. Wooley and his wife, who is now defendant in error Mrs. Wilson, to C. M. Joiner, trustee.

On November 15, 1893, Mrs. L. E. Overton sold and conveyed to J. Wooley a tract of land out of the Martin survey, described in the deed as follows:

"Beginning at the creek 45 vrs. of the S. W. Corner of John *M*. Harris Survey. Thence North 1390 vrs. to said John *M*. Harris N. W. Corner. Thence west 45 vrs. Thence north 200 vrs. Thence W 908 vrs. Thence South 1135 vrs. to the said creek. Thence S. E. with said creek to the beginning, containing two hundred and twenty four 3/4th acres."

On March 30, 1927 J. Wooley and his wife executed and delivered to C. M. Joiner, trustee, an oil and gas lease describing the land leased as follows:

"A part of the Thomas Martin H. R. Survey about 4 miles East of town of Overton, and being the same land conveyed to the undersigned by Mrs. L. E. Overton by deed dated Nov. 15, 1893 and of record in Vol. 43 pages 76-77-78 of the Deed Records of Rusk County, Texas, less 50 acres of land sold to C. E. Edwards, also 50 acres of land sold to Willis Wooley and one acre sold for School Building—leaving a balance of 123 3/4 acres more or less—Reference is here made to above deed for a complete description of said land, and containing 123 3/4 acres, more or less."

The tract here in controversy is a narrow strip of land 55.7 varas in width north and south and about 900 varas in length east and west, its north boundary line being at and along a fence built and maintained by J. Wooley and his wife as the division fence between their land and the land of Henry Sexton lying to the north. It is the contention of defendants in error that the small tract of land in controversy is not included within the boundaries of the land which was conveyed to J. Wooley by Mrs. Overton, that Wooley and his wife acquired title to the tract in controversy, not by or through the conveyance from Mrs. Overton, but by adverse possession, and that the said small tract was not leased by J. Wooley and wife to C. M. Joiner, trustee. Plaintiffs in error take the position that the tract of land in controversy is included within the boundaries of the land conveyed by Mrs. Overton to J. Wooley and within the boundaries of the land leased by Wooley and wife to Joiner, trustee.

The 224-3/4 acre tract conveyed by Mrs. Overton to Wooley is described in the deed as beginning at the creek 45 varas of the southwest corner of the Harris survey, thence north 1390 varas to the northwest corner of the Harris survey, thence west 45 varas, thence north 200 varas, thence west 908 varas, thence south 1135 varas to the said creek, thence southeast with the creek to the beginning. The surveyor, Pena, who testified for defendants in error, had no difficulty in finding the two corners on the creek. He testified that after running north from the beginning corner on the creek to the northeast corner of the Harris survey, thence west 45 varas and thence north 200 varas, he fell 55.7 varas short of reaching the fence which Wooley built as marking the north line of his land. If the northeast corner of the land described in the deed is fixed at the 200 varas point, that is, 55.7 varas south of the fence, and the north line constructed from that point, then the land sued for lies outside of the tract described in the deed. It is the theory of defendant in error, which was adopted by the Court of Civil Appeals, that the north line should be thus constructed. The surveyor further testified, however, that if the north line of the tract conveyed by the deed is constructed from the 200 varas point, then the length of the west line of the tract which he ascertained by measurement to the creek, is 1026 varas instead of 1135 varas as described in the deed. It is further shown by the surveyor's testimony that if the north line is constructed from the 200 varas point the area of the tract conveyed by the deed will be 216-1/4 acres instead of 224-3/4 acres, as called for in the deed, a shortage of 8-1/2 acres. If

the line on which Wooley built and maintained the division fence between his land and the Sexton land to its north is taken as the north line of the land conveyed by the deed from Mrs. Overton, the east line of the tract described in that deed is excessive in length by 55.7 varas and the west line is short in length by 54 varas and the tract has almost exactly the acreage called for in the deed.

The substance of the testimony of defendant in error Mrs. Wilson, formerly Mrs. Wooley, is as follows: She was married to J. Wooley in 1892. He then as a tenant was living upon and farming the land which was conveyed to him by Mrs. Overton in 1893. When they bought the land there was a fence on the east side of it but no fence on the north. Soon after buying the land, something like two years, she and Mr. Wooley built a rail fence along the north side of it. That fence stood for about six years, when they built a wire fence where the rail fence had stood. The wire fence is still standing. She and her husband used the land up to the fence for pasturage and farming every year until his death in 1931. During all those years they claimed the land up to the fence and she had never heard of anyone making adverse claim to any part of the land that they had under fence. On cross examination, after testifying again to the construction of the two fences and that they were in the same location, she testified that she claimed originally up to the rail fence and thereafter up to the wire fence and considered it her land.

On May 6, 1919, Wooley and his wife executed to McFarland and others an oil and gas lease for a term of ten years on all that part of the 224-3/4 acre tract lying north of a public road, describing the land leased as bounded on the north by the Sexton land and as being a part of the Martin survey bought from L. E. Overton, referring by book and page to the record of the deed from Mrs. L. E. Overton to J. Wooley. On October 6, 1930, Wooley and his wife sold and conveyed to Cameron and Tucker an undivided one-half interest in the oil, gas and other minerals in the 224-3/4 acre tract except that part of the land lying south of the road and theretofore sold by them. The deed, which was made expressly subject to the oil and gas lease made to Joiner, trustee, in its reference to that lease, amounts, in our opinion (though its language is in this respect somewhat ambiguous) to a recognition by Wooley and wife that the lease covers all of the land owned by them in Rusk County.

Defendant in error Mrs. Wilson executed three right-of-way deeds for pipe lines, two to the Humble Oil & Refining Com-

pany in 1931, and one to the Gulf Pipe Line Company in 1933, affecting the land lying north of the road, in each of which she described the land as bounded on the north by the Sexton land and as being land which she had acquired from White or Overton.

In the years 1931 and 1932 Mrs. Wilson made three affidavits in which she described the part of the 224-3/4 acre tract lying north of the road as having been acquired by her and her deceased husband from Mrs. L. E. Overton, as being the land which they had fenced, lived upon and possessed for more than thirty years, and as being the land leased for oil and gas in 1919 to McFarland and others and in 1927 to Joiner, trustee. In one of these affidavits, after setting out the description contained in the lease to Joiner, she stated that the lease included and was intended to include the 123-3/4 acres of land north of the highway, that the said land was a part of the 224-3/4 acres purchased from Mrs. Overton and that the said tract of land had been under fence for more than thirty years, during which time she and her husband lived upon it and had peaceable possession of it.

Mrs. Wilson testified that defendant in error Ellison came to her and wanted a contract affecting her land. She made a written contract with him in which her husband and her son joined. By the terms of the contract, which was executed June 6, 1934, Ellison agreed to cause a survey of her land to be made in order to ascertain whether she owned any land not within the field notes of existing oil and gas leases and she agreed, in the event such land was discovered, to execute to him an oil and gas lease thereon, the lease to reserve the usual royalty and also an oil payment of $2,000.00. The survey was made and an oil and gas lease executed to Ellison covering the small tract in controversy in this suit, which was filed a short time after the execution of the lease.

Mrs. Wilson testified that she and her husband, Wooley, never had their land surveyed, except the several tracts that they sold south of the road. It is further shown by her testimonty that the Humble Oil & Refining Company, assignee of the lease to Joiner, trustee, in so far as it covers the north 100 acres of the leased land, had drilled nine oil wells on the land when she executed the contract with Ellison.

The problem presented is to ascertain the intention of the parties to the deed from Mrs. Overton to J. Wooley with respect to the location of the north line of the tract conveyed. That intention of course is to be gathered in the first instance and primarily from the deed. Defendants in error insist that

since there are no inconsistencies or ambiguities appearing in the description in the deed, the location of the north line of the tract conveyed must be determined by beginning at the beginning corner on the creek, running thence north to the northwest corner of the Harris survey, thence west 45 varas, thence north 200 varas for the northeast corner of the tract, and thence west 908 varas.

■■ It is true that there are no ambiguities appearing on the face of the deed, but they arise when the field notes are applied to the ground. To give effect to the 200 varas call and extend the north line of the tract west from that point is to contradict the description in the field notes of the length of the west line of he tract. That line, if the north line were constructed from the 200 varas point, would have a length of only 1026 varas instead of the 1135 varas given in the field notes. Such construction of the north line would cause the tract of land to contain 216-1/4 acres when the deed describes it as having 224-3/4 acres. There is of course no ambiguity in the one call, north 200 varas from a given point, and no ambiguity arises in the application of that one call to the ground, but ambiguity, inconsistency between that call and the call for the distance from the northwest corner to the creek, does arise when the field notes are applied to the ground. Ambiguity thus having been shown, resort may be had to rules of construction and to extrinsic evidence, even parol evidence, in order to interpret properly the description in the deed and to give such effect to the whole and to the parts of that description as will accomplish, rather than defeat, the intention of the parties. Thompson v. Langdon, 87 Texas 254, 258, 28 S. W. 931; Wilson v. Giraud, 111 Texas 253, 263, 231 S. W. 1074; Gill v. Peterson, 126 Texas 216, 222, 86 S. W. (2d) 629; Blake v. Pure Oil Company, 128 Texas 536, 544, 100 S. W. (2d) 1009; Miller v. Southland Life Insurance Company, 68 S. W. (2d) 558.

■ Defendants in error would give controlling effect to the beginning corner, or to the corner 45 varas west from the northwest corner of the Harris survey, and the distances north from those corners to the northeast corner of the tract. There is no proof that either the east line or the west line of the tract was actually run and measured. Mrs. Wilson's testimony indicates that no survey was made. Such being the facts and there being no doubt as to the location of the two corners on the creek, the southeast and the southwest, one corner is entitled to as much weight as the other in determining the location of the north or back line. Scott v. Pettigrew, 72 Texas 321,

329, 12 S. W. 161; Miles v. Sherwood, 84 Texas 485, 489, 19 S. W. 853; Anderson v. Schaefer, 275 S. W. 300, 302. If the location of the north line is fixed solely by course and distance from the southwest corner on the creek, the line will be about 55 varas north of the fence built by Wooley as division fence between his land and that of Sexton to the north, the east line of the tract will be excessive in length by about 110 varas and the tract will contain eight or nine acres in excess of the acreage called for in the deed. If, on the other hand, controlling effect is given to the southeast corner on the creek, or to the corner which is 45 varas west of the northwest corner of the Harris survey, and the location of the north line fixed by course and distance from either of those corners, the north line will be about 55 varas south of the division fence built by Wooley, the west line of the tract will be about 109 varas shorter than its length as described in the deed, and the tract will contain 216-1/4 acres of land instead of 224-3/4 acres, a shortage of 8½ acres.

■■ In such state of facts quantity becomes a material circumstance. Welder v. State, 196 S. W. 868, (application for writ of error refused); Benavides v. State, 214 S. W. 568; Scott v. Pettigrew, supra; Miles v. Sherwood, supra. The tract, as has been said, has almost exactly the acreage described in the field notes of the deed when the line of the fence built by Wooley is taken as the north line. The adoption of that line as the true north line of the tract, a compromise between a course and distance construction from the southeast corner, and a course and distance construction from the southwest corner, not only gives to the tract of land conveyed by the deed the acreage that the parties to the deed intended that it should have, but it conforms to the construction placed on that deed by the grantee Wooley and his wife, who is a party plaintiff in this suit, thus giving effect to what clearly appears from the evidence to have been the intention and understanding of Wooley when the deed was made. In our opinion it is thoroughly demonstrated by the evidence hereinbefore set out; including the testimony of Mrs. Wilson, the construction of the fence soon after the deed was delivered, the recitals in the several instruments executed by Wooley and his wife, and the several affidavits made by Mrs. Wilson, that both Wooley and Mrs. Wilson, from the time when the deed was made up to the time the contract was made with the defendant in error Ellison, construed the deed from Mrs. Overton and their lease to Joiner, trustee, as covering the land as far north as the fence

and including the area in controversy, and that they claimed and possessed all of the land under that deed.

We conclude, for the reasons stated, that the trial court did not err in instructing the jury to return a verdict in favor of plaintiffs in error. Accordingly, the judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion adopted by the Supreme Court November 1, 1939.

Rehearing overruled November 29, 1939.